[No. 7827.]

## LATHROP v. MADDUX.

1. PLEADINGS—*Construed.* The complaint alleged a purchase by plaintiff from defendant of a traction engine; that the purchase was induced by certain representations of defendant as to the capacity of the engine, which were relied upon by plaintiff; the falsity of these representations, the entire insufficiency of the machine, its return by plaintiff and receipt and detention by defendant, and prayed judgment for the return of the moneys paid by plaintiff on account of the purchase, and the cancellation of certain promissory notes executed by him for part of the purchase price. *Held* an equitable action for rescission of the contract. (259, 262)

2. FRAUD—*Sale—Innocent False Representations of the Seller,* material to the transaction, and inducing the purchase, bind him in equity even though he was not guilty of intentional fraud. (265)

3. ——*False Representations as of One's Own Knowledge,* as to matters of which the party is ignorant, the law imputes a fraudulent intent. (265)

4. ——*Rescission of Contract—Delays.* One who would rescind a contract must do so within a reasonable time. Delays induced by the promises of the other party, or his acts and declarations, may be excused. (267)

*Error to Montrose District Court.*—Hon. SPRIGG SHACKLEFORD, Judge.

Mr. C. J. MOYNIHAN, Mr. DAN H. HUGHES, and Messrs. DAVIS, WHITNEY & MOTHERSILL, for plaintiff in error.

Mr. WALTER P. CROSE, and Messrs. CATLIN & BLAKE, for defendant in error.

Mr. JUSTICE SCOTT delivered the opinion of the court:

This is an action to rescind a contract. The complaint in brief, alleges, that on the 28th day of August,

1909, the plaintiff entered into an agreement with the defendant for the purchase of a twenty horse power International Harvester gasoline traction engine. That the agreed price was $1,680.00, to be delivered in the city of Montrose, of which $500.00 was to be paid upon delivery, and the remainder by two promissory notes due January 1, 1910, and December 1, 1910, respectively, to be secured by chattel mortgage.

It is alleged that the defendant represented to the plaintiff that the engine so agreed to be purchased, was a twenty horse power traction engine; that said engine would develop twenty horse power at the belt and twelve effective horse power on the traction. That the engine was identically the same engine that had been entered in competitive tests for plowing purposes in Manitoba and Brandon, Canada, and at which time it had won prizes and made records; that the engine was in every way suitable for the purposes desired, with standard size and weight shaftings, and castings made of the best material, and that the machine would develop 240 revolutions per minute, twelve horse power effective traction, and would give a speed on the traction of two and a quarter to two and one-third miles per hour; that the defendant further represented that the engine would have 22 inch drive wheels; that the plaintiff believed and relied on such representations by the defendant, and by reason thereof contracted for the same upon the terms above set forth.

It was further alleged that afterward a traction gasoline engine was delivered by the defendant to the plaintiff; that at the time of the delivery, the plaintiff was ill, and in a sanitarium, and unable to inspect the machine, but thereupon paid the $500.00 in cash, and executed and delivered the notes and mortgage; that shortly

thereafter repeated attempts were made to do plowing with the engine, and with care and under varying conditions, and that under such tests the engine failed to develop more than five horse power of effective traction at any time, and did not exceed a speed of more than one and a quarter miles per hour. That the engine delivered is not the kind of an engine which participated in the competitive tests as represented by the defendant; that all such engines were gear driven and that the engine delivered was a friction drive. The complaint alleges many other defects in the construction of the engine, and that after such tests, and immediately after the discovery of the defects, the plaintiff notified the defendant thereof. That thereafter the defendant caused two of his experts to overhaul the engine, and put it in order, but that they were unable to develop more than three horse power effective traction, or a speed of more than one and one-half miles per hour. That at that time the plaintiff advised the defendant that the engine was not as represented and thereupon re-delivered the same to the defendant, and which delivery was accepted by him, and who thereafter kept it in his possession.

The complaint further alleges a demand for the cancellation of the two notes, and for the sum of money paid in cash upon delivery of the engine. The complaint further alleges damages sustained, and also contains another cause of action upon a different matter.

The answer is a specific and general denial of the allegations of the complaint and asks for judgment upon the notes remaining unpaid, and for foreclosure of the mortgage.

There is no contention in the briefs and arguments that the engine was as it is alleged to have been represented, nor that it was such as to in any reasonable manner do the work for which it was purchased.

The contentions of the plaintiff in error are; that the plaintiff is precluded from recovery in the case for the reasons: (1) that the cause of action, if any, set up in plaintiff's pleadings, is one for loss for damages upon breach of warranty and not one for rescission; (2) that if it be an action for rescission, then there is not sufficient evidence of fraud to sustain such action; (3) that in any event the plaintiff has waived his right to rescission by not acting promptly, by dealing with the property as his own, and by placing himself in such position as to make it impossible to place the defendant below, *in statu quo*.

The complaint alleges a contract of sale, certain representations and warranty as to the character of the engine, and as to speed, power and work it was represented to do, as related to the purpose for which it was purchased, together with a statement of results of field tests, in which the kind of an engine so sold participated, together with reliance by plaintiff upon such representations, and contains allegations as to the falsity thereof.

It closes with a prayer specifically asking for a return of the sum paid upon delivery, with interest, and for the cancellation of the two unpaid notes. The case was tried upon this theory and judgment rendered accordingly. The findings of the court conclude in the following language: "I am not satisfied as to the damage that has been done to this engine by the use. The evidence is not clear upon that subject, nor am I satisfied as to the amount of damages which the plaintiff suffered. Certainly, some of his claims, for damages are unreasonable, and are not established at all, in my judgment. I will ignore his claim for damages and I will give a judgment for the plaintiff in this case for the return of the money, which he paid, and for the cancellation of the notes and mortgage, and that he recover his

costs.'' It is very clear that the action was one in equity and to rescind the contract.

It appears that in the month of May, 1909, the plaintiff Maddux called upon the defendant Lathrop, at the latters' hardware store in Montrose, and expressed a desire to purchase a gasoline traction engine. The defendant then stated that he had no such engine as that desired, but that he handled other kinds of machinery of the International Harvester Company, and would look into the matter. Shortly afterward a Mr. Stream, representative of the Harvester Comany, came to Montrose and the defendant then took him to see Mr. Maddux. After some general conversation between this agent and Maddux relative to the Harvester Company's traction engine, Maddux signed an order for an engine. This order was dated May 26, 1909, and was given by the plaintiff with the understanding that it was not to be final until the plaintiff had thirty days time in which to make an investigation concerning the merits of the engine, thus agreed to be purchased, within which time the plaintiff might countermand his order.

The testimony further shows that within the thirty days from the signing of the order Maddux, the plaintiff, went to the defendant's store and told him that he had made an investigation concerning the engine manufactured by the Harvester Company, and that such investigation was unsatisfactory, and therefore would not take it. That later, and in August of that year, the defendant sent for Maddux, who came to the store, whereupon the defendant produced a sales catalogue, or rather a catalogue of the Harvester Company designed for the trade, and upon this matter the plaintiff testified that, ''he, Lathrop, brought out reports of the Winnipeg trial and said, 'I told you the engine was the best engine made and this proves it to you.' He showed reports and

printed matter concerning the International Harvester engine. It was an advertisement in the dealers journal that he showed me, to show how cheaply it would work and what prizes it had taken. He told me that was what it had done and I could see what it could do. He proposed to send me the engine itself, the identical engine that had participated in these trials. He had a letter from Mr. Stream, which he read to me, stating, that Mr. Stream kept posted on these things and knew how it was, and that Mr. Stream said that it was all right. He told me the International Company did a big business and they could not afford to give out information that was not satisfactory, and that he would guarantee anything they say about it.''

The trade journal which was then exhibited to the plaintiff, was introduced in evidence, and in this appears to be a cut or picture of the engine, together with accounts of the field tests in which that kind of engine was the winner.

It is admitted by the defendant that the engine or the kind of engine that participated in the field trials, the account of which was exhibited to Maddux at the time that he gave the order, was not the same engine delivered to Maddux. It appears that the engine delivered was of an earlier manufacture and was a friction drive, while the engine that participated in the field tests and which the plaintiff thought he was buying, was a gear drive.

The defendant Lathrop contends that he made no warranty at the time the order was given, and that he did not know there was any difference between the engine that participated in the trials, and the engine he delivered to the plaintiff, and it would appear that neither Maddux nor the defendant had any clear understanding as to whether the engine used in the field trials

was a friction or a gear drive. This much however appears from the testimony to be clear, that the plaintiff purchased the engine with the full understanding upon the part of the defendant, that his purchase was to be the kind and character of engine that had been the winner in the field tests described in the journal. When in fact the engine delivered was an entirely different sort of an engine. It is likewise plain that this purchase was made solely upon these representations, and also, that the engine was unfit for the purpose for which it was sold to the plaintiff.

It is contended by counsel for defendant, that there is no evidence of such fraud or mistake as will justify a rescission of the contract. That it is a case of mutual mistake, and this argument is based upon the testimony of defendant Lathrop, as follows: "I didn't know at that time the difference between the engine I was authorized to sell, and the one that is described in the advertisement. The difference is between the cog drive and friction drive. That is what I understand. I was not aware when I showed him that advertisement that that advertisement was any different, illustrated any different kind of an engine than what we already had his order for. I don't think he was aware of any. I have learned since that they are two different engines, but I don't think either of us knew it then."

It cannot be said that the representations so made to the plaintiff by the defendant to induce the purchase were in any sense accidental.

Maddux had refused to purchase the Harvester Company engine because of his investigation, and information obtained unfavorable, after signing the original order. He had so advised the defendant.

The evidence further shows that with the knowledge of defendant, Maddux had ordered another and different

engine from a Pennsylvania manufacturer, after his refusal to take the one ordered in May of the Harvester Company, but which he was unable to secure. That it was after this that the defendant induced him to order the one which had succeeded in the field tests.

Nothing can be clearer than that the order was given upon the representations at that time, by means of the showing in the trade journal, and the defendants statements concerning the truth of such showing.

It is equally true that he did not receive the machine discussed in the trade journal, but on the contrary, an entirely different one.

Giving to both parties full credit for sincerity, then the defendant intended to sell and the plaintiff intended to buy the machine described in such journal, and not the one that was delivered to him.

It can hardly be said that the defendant was innocent in the matter of making the representations he did, for he was the seller and it was his duty to know as to the truth or falsity of his representations which induced the purchase and upon which representations the buyer relied. But if we concede that the defendant was innocent of intentional fraud, he is nevertheless bound in equity by his representations.—*Brooks v. Hamilton,* 15 Minn. 26, Gil. 10; *Baptiste v. Peters,* 57 Ala. 158.

It was said in *Stimson v. Helps,* 9 Colo. 33, 10 Pac. 290, that:

"It is not necessary, in order to constitute a fraud, that the party who makes a false representation should know it to be false. He who makes a representation as of his own knowledge, not knowing whether it be true or false, and it is in fact untrue, is guilty of fraud as much as if he knew it to be untrue. In such a case he acts to his own knowledge falsely, and the law imputes a fraudulent intent.—Kerr, Fraud & M., 54 et seq., and cases

cited; Bigelow, Fraud, 63, 84, 453; 3 Wait, Act. & Def. 438 et seq.; 2 Estee, Pr. 394 et seq.'' *American B. & T. Co. v. Burke,* 36 Colo. 49, 85 Pac. 692.

As was said in *Smith v. Columbus Buggy Co.,* 40 Utah, 580, 123 Pac. 580:

''This, however, was not an action for deceit. It was one to rescind a contract and to leave the parties thereto in *status quo.* In the latter action, it is not essential, like in the former, that the party who made the representations knew them to be false. It is enough if it be shown that the representations were in fact false; that the party who rescinds had a right to rely and did rely on them, and was thereby deceived, and for that reason entered into the contract of purchase; and that the representations were material—that is they related to the subject matter of the contract of purchase. All the well-considered cases are to this effect. See, among others.—*Kountze v. Kennedy,* 147 N. Y. 129, 41 N. E. 414, 29 L. R. A. 360, 49 Am. St. Rep. 651; *Foster v. Wilshusen,* 14 Misc. Rep. 520, 35 N. Y. Supp. 1083; *McClellan v. Scott,* 24 Wis. 81, and cases cited in them.''

The defendant further contends that the plaintiff waived his right of rescission by not acting promptly and in dealing with the property as his own. The evidence does not justify any such conclusion. This shows that the engine was delivered at Montrose in October, 1909, and that the plaintiff was then confined by illness at a sanatarium where the notes and mortgage were executed. It was a very dry fall, and little could be done to test it until the following spring. In the fall when the plaintiff complained of the defects, the defendant asked him to wait until spring and said he would see that it was all right. Plaintiff learned in February, 1910, that it was not the engine he had purchased. Lathrop insisted he would make it good, and had experts attempt

to do so. The plaintiff finally delivered the machine to Lathrop May 10, 1910. Lathrop attempted afterward to sell it to another party but failed to do so.

It is the rule of the law that when a party elects to rescind a contract he must do so within a reasonable time, and what constitutes a reasonable time depends upon the facts and circumstances of the particular case, to be determined by the court. Neither may such party play fast and loose. But the evidence does not disclose such a situation in this case, particularly so when we consider the repeated promises of Lathrop to remedy the defects.

The rule in this respect is stated in 35 Cyc. 154, to be; that a delay on the part of the buyer will be excused in exercising his right to rescind, if it is due to the promises of the seller that the defect will be remedied, or to his requests that further trial be made, or to other acts or declarations of the seller tending to induce delay.

The testimony shows no equities in favor of the defendant. He delivered a machine other and different from the one represented and one that did not meet the representations made concerning it, and which proved upon tests, substantially worthless for the purpose for which it was sold.

Under the state of facts presented the defenses interposed are merely technical, and do not go to the merits. Such defenses may be entitled to consideration when they tend to promote justice, but when the sole result can be to perpetuate a wrong, they are not entitled to serious consideration, so long as a settled rule of law is not violated.

The judgment is affirmed.

MUSSER, C. J. and GARRIGUES, J. concur.