No. 16,404.

ELWOOD EDWARDS, INC. *v.* KINSEY.
(225 P. [2d] 59)

Decided November 20, 1950.

Messrs. DICKERSON, MORRISSEY & ZARLENGO, Mr. WILLIAM F. DWYER, Mr. WALTER F. O'BRIEN, Messrs. DAVIS & LUTZ, Mr. RALPH LOEB, for plaintiff in error.

Mr. WALTER F. SCHERER, for defendant in error.

*En Banc.*

Mr. Justice Holland delivered the opinion of the court.

We will refer to the parties herein as they appeared in the trial court, where defendant in error was plaintiff.

On March 2, 1949, plaintiff filed his complaint in rescission in the district court alleging that defendant was an automobile dealer and on or about September 1, 1948, plaintiff purchased a new 1949 Hudson sedan for use as a pleasure and business car; that defendant impliedly warranted the automobile to be, in all respects, of high quality and reasonably fit for such purposes and of merchantable quality; that he relied on defendant's skill and judgment and upon the implied warranty; that the automobile was not of high quality and reasonably fit for use as a pleasure and business car, but was of inferior quality and not fit for the purposes for which it was sold; that he paid $2,769.39 for the automobile, and has offered, and continues to offer, the return thereof, and has demanded a return of the purchase price, which defendant refuses to accept or pay; prays for judgment in the sum of $2,769.39.

Defendant filed its answer admitting sale of the automobile; alleging that the automobile was in good operating condition when purchased by plaintiff and agrees that any and all work was performed on it by employees of defendant; that any defect is the proximate result of mistreatment or neglect on the part of plaintiff; alleges that the only warranties made by defendant were those contained in a document, exhibit 1, attached to the complaint; that plaintiff accepted the automobile subject to the terms of exhibit 1; that exhibit 1 is a warranty in the following words: "Warranty. The Manufacturer's Warranty printed hereon is assumed by us and is in lieu of all other warranties express or implied. See Warranty in Owner's Manual."

Trial was to the court on October 31, 1949, resulting in a judgment for plaintiff in the sum of $2,769.39, with interest from November 26, 1948, and upon payment of the judgment, plaintiff was to deliver the automobile to defendant. Motion for new trial was dispensed with and in due course the writ of error herein is prosecuted.

Exhibit 1, attached to the complaint is a photostatic copy of a Hudson owner service policy, which contained an express warranty and which defendant contended was delivered to plaintiff; plaintiff did not remember receiving it, but did not deny that it was furnished him. Plaintiff remembered receiving the owner's manual, also containing the express warranty.

Plaintiff testified that at the time of the purchase he bought the Hudson because he thought it was a good car and he informed defendant's sales manager that he wanted the car for transportation to and from his business and for social use; that he had owned automobiles for twenty years and had driven approximately a million miles; that he had looked at other automobiles that were not available and that he knew "Hudson" is a trade name; that prior to the purchase, he talked with possibly fifty or ninety friends and customers, some advising against buying the Hudson, but he did so anyway; that he relied on the advice of a Mr. Bert Jones, a Hudson owner, and on the integrity of the Hudson Motor Company, and also on the advice of his service station man.

He further testified that on the first trip he had trouble with the car overheating and that there was some oil on the floor of his garage and he took the car to defendant's mechanic; that after two or three days, it was returned to him and there was another oil leak; that the car was again taken to defendant for repairs, and that he had trouble with the automatic choke and the door lock; that while he was on a hunting trip, the car was left at defendant's place of business for repairs and it still leaked oil on the floor of the garage after that; that the antifreeze solution leaked out around the head

gasket during the period of the ninety-day guarantee against defective parts or within 4,000 miles driving, whichever was first; plaintiff, on November 26, wrote to the Hudson Motor Company at Detroit, Michigan, making all of his complaints about the automobile and on the same day, wrote a letter to defendant putting them on notice that on that date his car had been driven 3,803 miles; that 87 days had passed since the day of the purchase; and stated that inasmuch as the automobile was not satisfactory, he made demand for return of the entire purchase price, plus all incidental costs, or a new and usable automobile at no additional cost. On December 3, he received a reply from the Hudson Motor Company referring him to Fred Ward, Inc., 1300 Lincoln Street, Denver, as the company's distributor in Denver. On December 15, he again wrote to the Hudson Motor Company at Detroit, reiterating his complaints about the automobile and set a deadline as of December 31 for some definite relief before he would institute legal proceedings.

These letters were admitted over the objection of defendant on the grounds that they were hearsay; that the Hudson Motor Company was not a party to the suit; that defendant would be denied the right of cross-examination; and if admitted in evidence, would be received as plaintiff's complaint to which defendant was not a party.

The substance of the testimony of the witnesses for defendant was to the effect that the automobile sold to plaintiff was in good merchantable condition and that it was no different from any other Hudson automobile in that minor defects would show up in any car that required attention; that all of the repairs necessary under plaintiff's complaint were promptly made, and the car put in good condition; that the gaskets were tightened, the lock on the door fixed and the motor tightened up at the point where a small leak of oil was shown; that the automobile did not leak a half pint of oil in a 1,000

miles driving; that it was impossible to satisfy plaintiff, who continued to use the car during all the period and drove the entire 4,000 miles before making any demand on defendant for a rescission of the purchase contract; that plaintiff made demands over and above the purchase price.

The district manager for the Denver distributor (not the defendant corporation) testified that he saw the car after being parked on the sales floor over night and there was neither evidence of an oil leak nor a water leak.

Elwood Edwards, president of defendant corporation, testified that the service policy containing the warranty was given to plaintiff with the Hudson owner's manual; that no promise was made to plaintiff as to what the car would or would not do; that the car was sold under the trade name of "Hudson" which is used nationally and state-wide; that in trying to satisfy a customer, he offered to adjust the matter by telling plaintiff to leave his car and he would get all of his money back and either apply it on another car or give him the money, but plaintiff replied, "I would not take my money back for the car in full, I expect something extra;" he further testified that between September 1, 1948, the date of the purchase and February 21, 1949, the date the suit was commenced, plaintiff used the car and it apparently was in good working order and served all the purposes of plaintiff for which it was bought. The service manager for defendant testified that after the first of the year 1949, the value of the car would be $1,500. Plaintiff was recalled and denied that he ever demanded anything over and above what he paid for the car, including all incidental costs.

It is the contention of defendant that there is no evidence that plaintiff relied solely on the seller's judgment, but there is evidence that he examined the automobile before he purchased it. It is further contended that under the statutes, there was no implied warranty made by the defendant or his agent since the automobile

was sold under a recognized trade name. A further contention is that the judgment of rescission which would allow plaintiff the use of the automobile from the date of the purchase to the date of final determination without any expense, together with an award of interest is wholly inequitable and is a reward to plaintiff instead of a rescission of the contract. It is argued that the judgment is manifestly against the evidence because the court, in receiving evidence of the negotiations, made an effort to compromise, and also that the court was influenced by the correspondence between plaintiff and the Hudson Motor Company, erroneously admitted in evidence.

There is no dispute as to the allegation of plaintiff's complaint to the effect that the total price paid for the automobile was $2,769.39; that plaintiff has offered, and continues to offer, to return the automobile to defendant; that he has demanded the return of the purchase price; and that defendant has refused to accept the return of the automobile or to return the purchase price. In fact, these allegations are admitted in the answer.

Upon submission of the case to the court, it found that at the time of the delivery of the automobile, plaintiff was furnished with the Hudson Owner's Service Policy contract, together with the Hudson Owner Manual, wherein the dealer thereunder represented that he had properly prepared the car for delivery to the owner for such purpose; that the automobile had not been properly prepared for the delivery, and was not reasonably fit for use as a pleasure and business car; that after both parties had endeavored to put the car in condition to be reasonably fit for such purpose, defendant failed and refused to carry out the warranties; that within a reasonable time plaintiff elected to rescind, and offered to return the automobile; and that defendant did impliedly warrant said automobile to be in all respects, reasonably fit for such purposes and of merchantable quality.

To sustain its contention that there is no implied war-

ranty as to the automobile's fitness for any particular purpose, defendant relies upon section 15 (4) of the Uniform Sales Act, S.L. '41, p. 825, chapter 143 A 1945 Cum. Supp. '35 C.S.A., which reads: "In the case of a contract to sell or a sale of a specified article under its patent or other trade name, there is no implied warranty as to its fitness for any particular purpose."

Plaintiff, to sustain his action for breach of an implied warranty, relies upon paragraph (1) of the same section, which is: "Where the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be reasonably fit for such purpose."

It undeniably is established by the testimony of plaintiff that he relied upon the judgment or recommendations of a friend who owned a Hudson automobile; that he relied upon the recommendation and judgment of his service station man; that he inquired of fifty or more persons about the Hudson automobile; and that he relied on the integrity of the Hudson Motor Company. He would not say that he did not receive the Hudson Owner Service Policy, which plaintiff says was delivered to him, together with an owner's manual at the time of the sale and delivery of the automobile. These documents contain the warranty clause hereinbefore set out, in which it is clearly stated that this warranty is in lieu of all other warranties express or implied, and is almost identical with the written warranty set out in the case of *Jamison v. Niel Nohr Automobile Co.*, 77 Colo. 85, 234 Pac. 695. It is apparent that plaintiff recognized the written warranty because he made sure that he was coming within its terms by writing his letter of November 26, to the Hudson Motor Company, and also a letter to defendant on the same date, calling attention to the fact that he had driven the automobile approximately

3,800 miles and that the date of this letter was on the eighty-seventh day and within the ninety-day period provided in the warranty.

Plaintiff alleged his offer to return the automobile upon the refund to him of the full purchase price which he had paid. He alleged refusal on the part of defendant. Defendant admitted the offer and the refusal, stating that plaintiff wanted more than the purchase price. There is no conflict in the evidence on the matter of plaintiff's offer to return the automobile, but there is conflict as to the terms upon which it was refused.

The finding of the court is to the effect that there was breach of both the implied and the written warranty, it thus appearing that the court considered both kinds of warranty. From our review of the testimony, it does not support the allegation of an implied warranty, but does definitely support defendant's contention that under paragraph 4 of section 15, chapter 143 A 1945 Cum. Supp., '35 C.S.A. there is no implied warranty where the sale was under a trade name. Therefore, determination of this case must depend upon the facts as they relate to a rescission of an express warranty.

■ The undisputed facts revealed by the record defeat plaintiff's right to rescission, and in thus holding, we do not determine his rights, if any, as to an action in damages. It is undisputed that plaintiff repeatedly returned the automobile for repairs that he claimed were necessary to put the car in reasonable condition for his use. This continued beyond what would seem to be a reasonable time if he intended to rescind. His actions implied a ratification of the sale as made because he did not, even within or after the warranty period contained in the service contract, leave the automobile in defendant's charge, or store it subject to defendant's orders. If he retained the automobile and continued possession of it for his own use, as is undisputed, he became, under the terms of section 69, chapter 143 A 1945 Cum. Supp., '35 C.S.A., bailee for the seller or defendant. "The effect of

the subsequent use of the property by the purchaser after the rejection of his offer to return depends upon the question whether such use was for his personal benefit or in compliance with the duties imposed upon him as the involuntary bailee of the seller. The use of the property as his own by the buyer may constitute a waiver of his right to rescind for fraud." 46 Am. Jur., p. 908, §778.

This position of plaintiff is made clear by the following testimony of Mr. Kinsey:

"Cross Examination

"By Mr. O'Brien:

"Q. Just one or two questions, Mr. Kinsey. Were you taken on a demonstration trip by the dealer or salesman in this case? A. No, sir. Q. Did you drive the car before you bought it? A. No, sir. Q. How many miles were on this car when the suit was commenced? A. When what, sir? Q. When the suit was commenced in February, how many miles? A. Oh, underneath the warranty period as set, or underneath the period that I understood, 4,000 miles and 90 days, something like that. I put it in my letter to them, 3800 or 3900. Q. The letter was written not when the suit was commenced; wasn't that letter written November 26, 1948? A. I don't know what the mileage was then. Q. Do you know what the mileage was on February 21, 1949? A. No, sir. Q. How many miles are on the car now?

"Mr. Scherer: Your honor please, that is objectionable. It has no bearing on this case.

"The Court: I don't know. It is a rather difficult matter here. On November 26, 1948, he had driven it 3803 miles. It is a complaint in rescission, but he has kept the property and used it, and in order for the Court to afford equitable relief—and that is what rescission is—if he had taken the car in and said, 'Here it is.'

"The Witness: I did. I did.

"Mr. Scherer: He offered to do it.

"The Court: If he had stored it—

"Mr. Scherer: We offered to return it.

"The Court: And drove it out again."

■ So far as the record discloses, at the time of the trial, nearly one year after the purchase, plaintiff had continuously used the automobile for his business and pleasure. He had driven it nearly 4,000 miles at the time he registered his written complaints. If there was a compliance with the judgment herein, which required a return of the automobile and a refund of the entire purchase price, it would be glaringly inequitable to require defendant to pay for the use and benefit plaintiff had received, and would be contrary to all rules governing the remedies of a buyer in an action for rescission of a sales contract. It is clear that plaintiff did not adhere to the long-established rule, that in order to rescind the contract for any breach of warranty, he should have acted promptly by refusing to keep the automobile instead of electing to retain the car and enjoying its beneficial use.

We conclude that plaintiff, under the facts of this case, lost his right to rescind and recover the full purchase price, and we reach this conclusion without consideration of his rights, if any, to recover damages.

The judgment is reversed.