## HAVAS MOTORS, Appellant, *v.* CHESTER COMBS, Respondent.

No. 3858

December 30, 1955.                291 P.2d 907.

*David Zenoff* and *Calvin C. Magleby,* of Las Vegas, for Appellant.

*Michael Hines,* of Las Vegas, for Respondent.

# OPINION

By the Court, EATHER, J.:

On or about the 13th day of February, 1954, Chester Combs, hereinafter referred to as the respondent, purchased from Havas Motors, Inc., hereinafter referred to as the appellant, under a conditional sales contract (or an automobile purchase order), a 1948 Studebaker automobile for the total purchase price of $616. Payments on said automobile were to be made as follows: $50 on February 13, 1954 and semimonthly payments of $22 each beginning on February 27, 1954, until paid. The last payment was made on August 21, 1954, by the respondent to the appellant, and a receipt acknowledging said payment was issued to the respondent by the appellant on said date.

At the time the parties entered into the sale agreement, the respondent was well aware of the fact that the car he was purchasing from the appellant was an out-of-state automobile; the car at the time of the purchase had Missouri license plates on it. At the time of the sale, appellant by and through its agents, advised the respondent that the appellant was the owner and entitled to sell the automobile; that the former owner had given the appellant a bill of sale for the automobile and had agreed to forward the "title." The respondent well knew that appellant did not have "title" to the automobile at the time it was purchased and that respondent would be compelled to obtain temporary permits until such time as "title" was forwarded to the appellant.

Each time respondent made a semimonthly payment he inquired about "the title," and was advised that appellant was still trying to get it. Thus respondent

continued to make his payments and anticipated them by making a final payment August 21, 1954. Appellant had still not obtained the title papers from Missouri, though efforts had been continuously made by correspondence with the former owner and others and with the motor vehicle department of Missouri. Although appellant had obtained a bill of sale when originally acquiring the car it concluded that it was necessary to obtain title by advertisement and sale under the mechanic's lien law. It advised respondent that it was doing this before the latter made his final payment, and the necessary publication under this statute was completed about the end of July.

In the meantime, during the subsistence of the contract, respondent had been driving the car equipped with a temporary permit which had to be reissued or confirmed every 30 days. He was entitled, under his contract, to have the title (here used in its legal sense) vested in him upon his making his final payment August 21, 1954. At that time he was advised that appellant had completed the obtaining of title by publication and that in order to issue the permanent registration certificate respondent's temporary plate would have to be surrendered. He did not have time to do this and appellant presented all of the papers, but the motor vehicle department again refused the permanent plate without surrender of the temporary plate.

Four days after his final payment of August 21 (the first date on which respondent was entitled to be vested with the title), namely, on August 25, 1954, respondent filed his complaint for a rescission of the contract, alleging for the first time that he was "ready, willing and able to return said automobile" and demanding the return to him of the total purchase price of $616. The trial of the action was had December 1, 1954. In the meantime the motor vehicle division of the public service commission of Nevada had issued to respondent

on September 3, 1954, its certificate of registration showing him to be the legal owner as well as the registered owner of the vehicle in question. Certificate of ownership, however, was apparently still being processed through the department.

Throughout the trial court, counsel and all of the witnesses referred to "the title" not in the usual legal concept of ownership or the combination of all the elements which constitute ownership, but rather as that slip of paper or instrument issued by the proper authorities of the state generally referred to as the "certificate of ownership" or possibly the certificate of ownership issued to A endorsed with A's assignment thereof to B. The confusion resulting from such concept of the word apparently contributed to the error in the trial court's conclusion.

The court rendered an oral decision from the bench to the effect that appellant had breached its implied contract "to furnish respondent title"; that respondent delivered back the car and that appellant refund him his $616. The effect of the judgment was to give respondent the free use of the car from the date of its sale to him February 13, 1954 to the commencement of the suit August 25, 1954, and apparently even to the time of trial, December 1, 1954, and presumably up to the time of argument of this appeal.

Respondent had sought damages as well as his rescission and the court had theretofore denied a motion to dismiss based upon the contention that the two remedies were inconsistent and that respondent should be compelled to elect. In its decision the court denied damages, for the reason that the damage and inconvenience suffered by respondent (by having to do with temporary licenses) was balanced by his having the use of the car. We may note that the only evidence of damage in the record is the payment by respondent of an aggregate of $8 for his temporary licenses, his inconvenience in being stopped on the road a number of times for questioning as to his temporary license and the necessity for

his going to the motor vehicle office on each occasion of obtaining a 30-day extension. As to the latter items, there was no evidence from which any conclusion could be drawn as to any specific amount of monetary damage. At no time until the filing of his complaint did respondent demand a rescission or offer to return the car or demand the return of his money.

Rescission is an equitable remedy, and even if we assume a technical breach of the contract because appellant did not hand respondent his title papers on the day of the final payment, many elements, under the facts herein recited, were so lacking that neither the attempted rescission in the filing of respondent's complaint on August 25, 1954, nor the judgment of rescission by the court can find justification, and the judgment must accordingly be reversed. Elwood Edwards Auto Sales v. Kinsey Inc., 123 Colo. 52, 225 P.2d 59.

This leaves undetermined the question of damage suffered by the respondent. The court did not find the amount of the damage, nor could it in our opinion have found any damages other than $8 costs of temporary license plates. "The law does not concern itself about trifles," and we accordingly require no action by the lower court on this item.

Reversed with costs, and remanded with instructions that judgment be entered for defendant.

MERRILL, C. J., and BADT, J., concur.