482 P.2d 435 (1971)
Orville N. EGGEN and Lela S. Eggen, Plaintiffs in Error,
v.
M. AND K. TRAILERS AND MOBILE HOME BROKERS, INC., a Colorado corporation, Defendant in Error.
No. 70-144.
Colorado Court of Appeals, Div. II.
January 26, 1971.
As Modified on Denial of Rehearing February 16, 1971.
Certiorari Denied April 5, 1971.
*436 Wagner & Wyers, Dean R. Vanatta, Denver, for plaintiffs in error.
Loye & Bangert, Wheat Ridge, for defendant in error.
Selected for Official Publication.
ENOCH, Judge.
This is a contract case in which the appellants, Orville N. Eggen and Lela S. Eggen, were defendants in the trial court and will be referred to herein as the "Eggens". The appellee, M. and K. Trailers and Mobile Home Brokers, Inc., a Colorado corporation, was the plaintiff in the trial court, and will be referred to as "M. and K."
The issue before this court is the right of the Eggens to rescind a contract entered into between the Eggens and M. and K. Initially, M. and K. filed a complaint to replevy a mobile home and to recover the amount alleged due on a promissory note. The Eggens filed an answer and counterclaim, seeking rescission of the contract.
The evidence presented at trial disclosed that the Eggens sought to purchase a mobile home in the summer of 1966. After looking at a number of models and makes of mobile homes, the Eggens selected one manufactured under the trade name of "Stewart". Various models of the Stewart unit were shown to the Eggens by a salesman of M. and K. After two or three conferences with the salesman, the Eggens agreed to buy a Stewart unit provided that certain changes could be made in the floor plan and interior finishes. Mr. Eggen prepared a drawing of the floor plan which was delivered to the salesman for M. and K. and, at the same time, other changes were discussed and agreed to. The salesman represented that these changes in the unit could and would be made at the factory before delivery.
On June 14, 1966, the Eggens signed a purchase agreement. On August 15, 1966, the Eggens made a down payment of $3,000, and executed a chattel mortgage and promissory note to M. and K. in the amount of $20,131.34 as payment in full for the mobile home. The evidence does not establish the exact date when the unit was delivered, however, it appears that it was delivered to the trailer park approximately two or three days after August 15th. The unit selected was manufactured in segments at the factory and required four or five days of labor on the site to fully assemble it. The end result was a *437 relatively permanent structure which was not mobile in its assembled condition.
On the date of delivery, Mr. Eggen immediately noted that the home unit did not meet the specifications of their contract with M. and K. As assembly of the unit progressed, Mr. Eggen was able to go inside. He then observed many other variances from the specifications, and numerous items of damage and poor workmanship within the unit. Upon noting the discrepancies, Mr. Eggen immediately notified M. and K. of the defects and also contacted his attorney. A conference with an M. and K. representative resulted and the Eggens were assured that the defects would be remedied according to the original plans and specifications. Following this assurance, the Eggens moved into the unit in the latter part of August, 1966. Thereafter, additional defects were discovered and reported to M. and K. Although some of the discrepancies were corrected or repaired, much was yet to be done. Consequently, the parties entered into a formal compromise agreement on November 8, 1966, in which the Eggens agreed to waive some of the defects and M. and K. agreed to correct others in accordance with the original plans and specifications embodied in the contract. Following that date, workmen from M. and K. did make some of the changes agreed to. However, the workmen were taken off the job in the latter part of January, 1967, and the Eggens were advised that nothing further would be done.
The evidence indicates that M. and K. had not put the unit in the condition which had been agreed to. After having made six monthly payments on the note, the Eggens, on advice of counsel, refused to make any further payments. By a letter of March 30, 1967, the Eggens' attorney, at their request, advised M. and K. that the Eggens, "hereby elect to rescind any obligations that may have arisen out of a `Customer's Purchase Agreement for Mobile Home, Travel-Trailer or Vacation Unit' signed by them on June 14, 1966." The letter further stated, "Please take further notice that Orville N. Eggen and Lela S. Eggen hereby offer to return to you the 1966 Stewart mobile home * * upon the tender by you to them of $4,006.56 ($3,000 down payment and six monthly payments of $167.76) plus the duly discharged promissory note of August 15, 1966 * * *"
The Eggens continued to live in the trailer home, standing ready and willing to give up the unit at any time upon M. and K.'s repayment of funds paid and redelivery of the note. However, M. and K. failed to respond to the Eggens' letter and did nothing until August 21, 1967, when a replevin action was filed. At this time, the Eggens counterclaimed for rescission of the contract. During the interim, while living in the unit, the Eggens did nothing to indicate that they had changed their position about the rescission.
The trial court granted M. and K.'s motion for summary judgment on the replevin claim. The unit was thereafter turned over to M. and K. and the issue of the Eggens' counterclaim for rescission proceeded to trial. The trial presented little conflict in the testimony as M. and K. presented no evidence in opposition to the counterclaim for rescission.
The trial court made extensive findings to the effect that the unit did not conform to the original specifications, concluding however that the letter of March 30, 1967, in which the Eggens elected to rescind the obligation:
"* * * does not conform with the requirements as to a recision. It was a contingent recision that the plaintiff had to turn back the money, had to discharge the promissory note and chattel mortgage, and make the defendants whole, and they did not offer at that time to deliver the trailer to the plaintiff, or make it available to the plaintiff, and defendants continued to live in it for four or five months, and only delivered it after the replevin action was started and the Court ordered the trailer turned over to the plaintiff."
*438 "The Court finds under the evidence in this case and all the facts, and particularly under the authority of the rulings of the Supreme Court in Wark v. Bock (sic Bopp), 119 Colo. 12 [199 P. 2d 892], [Elwood] Edwards [Inc.] v. Kinsey, 123 Colo. 52 [225 P.2d 59], and Gladden v. Guyer [162 Colo. 451] 423 [426] P.2d 953, that the defendants failed to act promptly, waived their remedy of recision, if any they had, and are estopped to set up the claim of recision because they failed to act promptly after discovery of the alleged defects and continuing to enjoy the trailer after the alleged notice of recision, and failed to unconditionally offer to surrender the trailer to the plaintiff and make it available to it."
The court further stated that since the Eggens had failed to establish the right to the remedy of rescission that it was not necessary to determine whether the trailer as delivered and subsequently repaired was in accordance with the contract or whether there were implied warranties or express warranties or representations.
We do not agree with the trial court's conclusion that the Eggens' attempted rescission was ineffective. On the contrary, we hold that the letter of March 30, 1967 was effective as a rescission. Although the unit was not returned to the seller, the letter clearly offered to return it to the seller, thereby complying with the requirements of the Uniform Sales Act, C.R.S.1963, 121-1-69(1)[1], which was in effect during the relevant periods of time.
We do not view the offer of return as conditional. A rescission renders the contract a nullity and the parties are put in the position they were in immediately prior to entering into the contract. In this case a rescission would result in the Eggens giving up the goods and M. and K. giving up the down payment and installments received, as well as the promissory note. This is exactly the result that the letter written by the Eggens' attorney sought to achieve. Hence, it was not conditional.
M. and K. relies on Gladden v. Guyer, 162 Colo. 451, 426 P.2d 953; Elwood Edwards, Inc. v. Kinsey, 123 Colo. 52, 225 P.2d 59, and Wark v. Bopp, 119 Colo. 12, 199 P.2d 892, as did the trial court. These cases stand for the proposition that a rescission must be timely and exercised with dispatch upon discovery of the grounds giving rise to the right. We agree with this principle of law. In this case the trial court found that a valid rescission was not made by the Eggens until they counterclaimed in September, 1967 to M. and K.'s replevin suit. If this finding were correct, the act of rescission might not have been timely. However, in light of our holding that the rescission of March 30, 1967, was valid and effective, the cases cited by M. and K. do not apply. We agree that a party must rescind a contract of sale within a reasonable time. However, what constitutes a reasonable time depends upon the facts of the particular case. Lathrop v. Maddux, 58 Colo. 258, 144 P. 870. The Eggens afforded M. and K. ample opportunity to remedy the defects. M. and K. cannot complain that the rescission of March 20, 1967 was untimely when the delay, if any, was caused by their own procrastination and refusal to honor their commitments. Lathrop v. Maddux, supra, states:
"* * * a delay on the part of the buyer will be excused in exercising his right to rescind, if it is due to the promises of the seller that the defect will be remedied, or to his requests that further trial be made, or to other acts or *439 declarations of the seller tending to induce delay."
The trial court made extensive findings of fact, which are amply supported by the evidence, to the effect that the trailer did not conform to the specifications of the contract. The only reasonable conclusion from such findings is that M. and K. breached its implied warranty under C.R.S. 1963, 121-1-14 and 121-1-15(1)[2], and we so hold.
The judgment of the trial court is hereby reversed and remanded with directions to enter judgment for the Eggens for rescission of the contract, return of their down payment of $3,000 plus their installment payments in the amount of $1,006.56, together with interest on the money judgment from the date of rescission, i. e., March 30, 1967, and return of their note.
SILVERSTEIN, C. J., and COYTE, J., concur.
NOTES
[1] "(1) (a) Where there is a breach of warranty by the seller, the buyer may, at his election:

* * * * *
(e) Rescind the contract to sell or the sale and refuse to receive the goods, or if the goods have already been received, return them or offer to return them to the seller and recover the price or any part thereof which has been paid."
[2] "121-1-14. Implied warranty in sale by description.Where there is a contract to sell or a sale of goods by description, there is an implied warranty that the goods shall correspond with the description and if the contract or sale be by sample, as well as by description, it is not sufficient that the bulk of the goods corresponds with the sample if the goods do not also correspond with the description."

"121-1-15. Implied warranties of quality.(1) (a) Subject to the provisions of this article and of any statute in that behalf, there is no implied warranty or condition as to the quality of fitness for any particular purpose of goods supplied under a contract to sell or a sale, except as follows:
* * * * *
"(c) Where the goods are bought by description from a seller who deals in goods of that description, whether he be the grower or manufacturer or not, there is an implied warranty that the goods shall be of merchantable quality."