Catkon, .Ch. J.
delivered the opinion of the court.
The cross bill asks to set aside the contract for the land purchased by Fortson from Hotchkiss, in 1822, on the ground that Hotchkiss practised a fraud upon Fortson in the sale. The land was sold for one thousand dollar's; six hundred of which was paid in hand, and two horses at eighty dollars. The highest price the land is proved to have been worth at that time, is six hundred dollars.
Fortson was moving to the west with a large family; he halted by the road side about twenty miles below Knoxville, and offered to purchase a plantation. He' had been examining the plantation of John C. Young on Saturday, and the parties seemed likely to contract. Young was to come to the camp of Fortson, which was near to the house of Hotchkiss on Monday morning. Young attended, and found Fortson very much intoxicated. Hotchkiss soon came up, and hearing the'conversation concerning the desire Fortson had to purchase land,he plucked Fortson by the sleeve. They stepped aside, and then walked off towards the house of Hotchkiss. They presently returned, and Hotchkiss announced that he had sold Fortson his land. One of Hotchkiss’ sons was in company, and another fell in with the old man at the house, and they walked over the plantation. The' young men swear they saw nothing in the gait, or heard nothing in the conversation of Fortson' to induce them to believe he was drunk. But Young, and a witness by the name of West, provo that Fortson was grossly drunk, and wholly unfit to transact important business. Of the truth of this, from the whole testimony, the court is well *71 convinced; and equally well, that Hotchkiss very artfully took advantage of Fortson’s situation to sell him his plantation, at what we imagine, from the proof, to have been .about double its value at that time. Hotchkiss drank with Fortson after they returned to the camp, and he says in his answer that they had a spree. Fortson and his family immediately, that evening, removed up to Hotch-kiss’ house; and in the morning one of the sons of Hotch-kiss produced, ready drawn up, the title bond; it was presented to Fortson, was signed by him and Hotchkiss, the vendor. The six hundred dollars was paid, and shortly after the two horses. This was done in execution of what had occurred the previous day. Fortson had seen nothing further of the land, and we imagine was in little better condition than the evening before. It is obvious he was passive in the hands of the defendant Hotchkiss and his sons; that he was in a situation so feeble and besotted, as to be easily imposed on, and that he was by no means fit to make a purchase of land and acquire a home for his family, is manifest. No time was given to become sober before he parted with his money and signed the covenant; or time for reflection or examination of the premises. Indeed, Houston and West, the two next neighbors, prove that Fortson was almost continually drunk from the time of the contract to the time of his death, which occurred a few months after; and they, the witnesses, did not think him at any time after he came to the country, fit to be contracted with, or do important business.
On this state of facts, it is insisted a court of equity will not set aside a contract because of exorbitancy of price. Sugden on Vendors, ch. 5, sec. I. The position assumed is correct, other circumstances aside; but as a fact in connection with others, the price obtained in this instance elucidates the conduct of Hotchkiss, and explains and gives force to the evidence on the part of the complainants in the cross bill, which is in conflict *72 with that of the defendant’s sons, so as to establish the fraud practised on Fortson; on which foot this cause is decreed.
A decree is next resisted on the ground that a long time had intervened between the malting of the contract and the filing of the bill; the contract having been made in 1822, and this cross bill filed in the year 1829.
From Fortson’s situation no laches could be imputed to him before he died; and after his death his wife and children were helpless and insolvent, as this record shows. Three hundred and twenty dollars of the purchase money was to become due two years after the contract was made. Judgment at law had been had against Mrs. Fortson as administratrix of her husband; the plea of fully administered was found for her, and then Hotchkiss filed his bill to enforce his lien against the land for the unpaid purchase money. To this bill the widow and heirs filed their answers, and also their cross bill to be relieved from the contract. The legal title now rests in Hotchkiss, and he is, in fact, asking a specific performance by his bill. We imagine that his claim to enforce the contract resting in covenant, opens that covenant to be set aside as voidable for fraud, unless some change in the property, rendered if impossible to restore the parties to their former situation; and on this ground the objection mainlj'-rests.'
It is admitted the land is worth much less now than in 1822; perhaps it is nów not worth more than three him-dred dollars. The fences-and improvements are dilapidated, and the cleared lands waste. This is easily adjusted. We adjudge the tract to have been worth six hundred dollars in 1822, and its cash value will now be ascertained, and the difference between the present value and six hundred dollars will be abated from the sum to be refunded by Hotchkiss to the administratrix of Fort-son. In other words Hotchkiss will be compelled to *73 belund the present value of the land. To this end the , . , , . - _ contract and covenant is declared void lor fraud.
On this last ground} the majority of the court have found themselves somewhat embarrassed. The rule is, that where the estate is a grossly inadequate consideration for the purchase money, equity will in general leave the parties to their remedies at law, withoht affording relief to either. Such is the opinion of Judge Green, and such were Judge Catron’s first impressions. But to dismiss both bills in this instance, as in Day vs. Newman, (2 Cox, 77: Sug. on Ven. 189) would ieave in the hands of Hotchkiss the six hundred and eighty dollars, the judgment against the éstate of Fortson; and he would, of course eject the widow and family of Fortsoh from the land by force of his legal title. The mind shrinks from an injustice so gross; and upon looking into the cases, so far as an opportunity has been afforded, no decisioh has been found dismissing the bill for specific performancia, and also the cross bill to be relieved from the contract, involving like unjust consequences. Here Fortson, by the covenant for title, was not to have a deed until the three hundred and twenty dollars were paid. At law his heirs have no remedy on the covenant until they pay up the judgments; and that is to abide by the fraud practised upon their father to its utmost limit. We grant if this were a naked case, where an extravagant price bad been promised, (the parties dealing originally on equal terms) equity would not interfere. It must often happen that men will give extravagant prices, and that a vendor would not be justifiable in parting with a home on reasonable terms. We recognize the force and justice of the argument of the counsel of Hotchkiss, which assumes that equity cannot make contracts for men; and in this case, if Fortson had not been imposed upon, and advantage taken of his situation, we would, regardless of consequences, dismiss both the bills; yet that the consequences of such a decree are entirely destitute of weight, cannot be said. The pecu™ *74 li'arity of the covenant for title, leaving the legal estaté with Hotchkiss, and cutting off Fortson’s remedy until the whole purchase money was paid, is not the kind of covenant on which the English, decisions are founded; there, the parties have been left to their mutual remedies at law; here, Fortson’s heirs can have no remedy, as this case is circumstanced.
We decree that the use of the land be set off against the interest of the six hundred and eighty .dollars; that the eighty dollars be refunded; that the present value of the land be ascertained immediately by the master; and the amount refunded to the administratrix of Fortson.— That the judgment at iaw must be perpetually enjoined, and Hotchkiss pay all costs of these suits and the suit at law.
Hecrefe reversed.