J. T. STAGGS, Appellant,

*v.*

HERFF MOTOR COMPANY, INC., and Commercial Credit

Corporation, Appellees.

390 S.W.2d 245.

(*Jackson,* April Term, 1965.)

Opinion filed May 7, 1965.

114

W. C. ROGERS, Memphis, for appellant.

ABE D. WALDAUER, PAUL M. BRYAN, Memphis, for appellees.

MR. JUSTICE CHATTIN, delivered the opinion of the Court.

This is a suit brought by the buyer, J. T. Staggs, to rescind a contract for the purchase of an automobile from the seller, the defendant, Herff Motor Company, for a breach of warranty and to recover the amount which he had paid on the automobile.

The facts are complainant, Staggs, purchased from defendant on or about October 30, 1961, a 1961 Galaxie Ford automobile which defendant represented to be new, but soon thereafter it developed the car had been used and was in bad condition.

The consideration consisted of a 1957 Ford automobile, valued at $540.69, a down payment of $200.00, and the execution of a conditional sales contract obligating complainant to pay thirty-five monthly installment payments of $82.00 each. The conditional sales contract was sold by the defendant to the Commercial Credit Corporation.

Within about thirty days after the sale, complainant learned the car was not new as represented and offered to rescind the contract, but the defendant refused the offer. However, defendant persuaded complainant to keep the car upon the promise the defendant would repair the car. After taking the car to defendant's repair shop on several occasions for repairs, an employee told complainant not to bring the car back for further repairs.

Complainant paid six monthly installments on the conditional sales contract. When he defaulted on the seventh installment, the credit corporation replevied the car and sold it.

The record shows, however, complainant remained in possession of the car for one year from the date of purchase and used it during the time.

The Chancellor sustained complainant's bill for a rescission.

Thereafter, the Credit Corporation settled with defendant and was dismissed from the suit prior to the appeal of the case.

The Chancellor ordered a reference to the Master to hear proof and report on four items. The fourth query is the only one we are concerned with and is as follows:

"What allowances, if any, in dollars and cents should be given defendants for the use and depreciation in value of the 1961 Ford by virtue of complainant having and using it for a period from on or about October 30, 1961, to on or about October 30, 1962?"

The Master reported the allowance for the use and depreciation of the car while in the possession of complainant was $918.00.

Complainant excepted to the report. Complainant insisted this item of the reference was, as a matter of law, improper because defendant was not entitled to be reimbursed for both the use and depreciation of the car since defendant had refused his offer to rescind within a month after the sale.

The Chancellor overruled this exception on the ground complainant had used the car for a year and should be liable for any resultant loss.

Complainant appealed to the Court of Appeals. A majority of that Court reversed the Chancellor on the ground complainant was not liable for any depreciation of the car, but was only liable for the value of the use of the automobile from the date of sale to the date of the offer to rescind. Accordingly, the case was remanded for the determination of that question.

Defendant has petitioned this Court for a writ of certiorari which we have granted.

Defendant's first assignment challenges the action of the Court of Appeals in holding query four of the reference was improper as a matter of law and reversing the Chancellor.

Section 47-1269(5), T.C.A., of the Uniform Sales of Goods Act provides where a buyer is entitled to rescind the sale and elects to do so, but the seller refuses an offer of the buyer to return the goods, the buyer is deemed to hold the goods as bailee for the seller subject to a lien to secure the repayment of any portion of the price paid.

This section does not provide for any setoff for either use or depreciation where the buyer, as in this case, retains the goods or article and uses the same. However, T.C.A. Section 47-1273 provides:

"In any case not provided for in this chapter, the rules of law and equity, including the law merchant, and in particular the rules relating to the law of principal and agent, and to the effect of fraud, misrepresentation, duress, or coercion, mistake, bankruptcy, or other invalidating cause, shall continue to apply to contracts to sell and to sales of goods."

To support defendant's first assignment of error, it is insisted defendant is entitled to an offset for the fair value of the use and depreciation of the automobile for the entire year complainant used it. Defendant cites and relies upon the cases of *Bluff City Buick Company v. Davis,* 204 Tenn. 593, 323 S.W.2d 1 (1959); *Schaeffer v. Richard,* 43 Tenn.App. 205, 306 S.W.2d 340 (1956); and *Lemborn and Company v. Green and Green,* 150 Tenn. 38, 262 S.W. 467 (1923). We cannot agree these cases support defendant's insistence. In the Davis case, Davis brought suit for a rescission on the ground the Buick Company had represented a car purchased from it was a new car when, as a matter of fact, it was a used car. The Chancellor allowed a setoff because Davis had used the car during the time he was undertaking to get the defendant to take the car back. Davis did not contest the setoff allowed nor was it an issue in the case.

In the Richard case, the trial judge allowed a setoff for the use and depreciation of an automobile because it was shown the car "was not in substantially as good condition as it was at the time the property was transferred to the buyer." The principal issue in that case was the right of the buyer to rescind under the facts. There was no issue as to whether defendant was entitled to a setoff for use and depreciation. The trial court allowed the setoff apparently on his own motion. The buyer

did not appeal. Furthermore, in the case at bar there is no evidence in this record the automobile was not in substantially as good a condition as it was at the time of sale.

In the Lamborn case, the defendants refused to accept some barrels of sugar purchased from complainants. Complainants sold the sugar at the market price and sued defendants for damages. Defendants filed a cross bill in which they alleged another and different shipment of sugar, bought through complainants, had been of poor quality and sought damages. The cross bill was dismissed. The Supreme Court on appeal held the cross bill was correctly dismissed because the defendants were bound by their election to rescind and having used the sugar and thereby consumed the consideration were not entitled to damages. Obviously, this case is not in point.

A decision of an appellate court is in a subsequent case authority only for the controlling question actually presented in the prior case for decision. We have considered the foregoing cases with that principle in mind. None of these cases, in our opinion, as to the question here presented, is in point. *Guffee v. Crockett,* 204 Tenn. 121, 315 S.W.2d 646 (1958); *Shousha v. Matthews Driv-urself Service, Inc.,* 210 Tenn. 384, 358 S.W.2d 471 (1962).

As said in the case of *State ex rel. Pitts v. Nashville Baseball Club,* 127 Tenn. 292, 154 S.W. 1151 (1912):

"It is a familiar principle that stare decisis only applies with reference to decisions directly upon the point in controversy."

On the other hand, in the case of *Camferdam v. Erwin Hicks Motor Car Company,* 11 Tenn.App. 249 (1930), plaintiff sued for damages for breach of warranty. Both parties, at the conclusion of all the proof, moved for

directed verdicts. The Court instructed the jury to return a verdict for plaintiff for a certain sum and explained how the jury should arrive at the amount.

In reversing the case, the Court of Appeals held the manner in which the trial judge had arrived at the damages was improper, and said:

"The plaintiff, if the warranty was breached and she is entitled to any damages, should be charged with a fair and reasonable sum for the use of said automobile while in her possession and there should be deducted any sum if she caused the car to be damaged or depreciated."

In the case of *Hotchkiss v. Fortson*, 15 Tenn. 67 (1834), complainant Hotchkiss had sold land to Fortson while Fortson was drunk. Fortson made a cash payment of $600.00 on the purchase price of $1000.00. Fortson remained drunk until he died a few months later. Some years later Hotchkiss sued the widow and children of Fortson to enforce a lien on the land to satisfy the balance of the purchase price. The widow filed a cross bill to set the sale aside for fraud. The Chancellor dismissed the cross bill and decreed the land be sold to satisfy the balance of the purchase price. On appeal the Chancellor was reversed and the contract was declared void for fraud. However, the Court also found the land was worth $600.00 at the time of sale, but had greatly fallen into disrepair. The Court remanded the case and ordered a reference to the Master to determine the then existing market value of the property, which amount would be refunded to the widow. Hence, an offset was allowed because of the physical depreciation of the property while in possession of the buyer.

Professor Williston in his work on sales has said with respect to rescission by a defrauded buyer:

"If the offer is rejected, he must hold as bailee what he has received and refrain from exercising acts of ownership.

\* \* \* \* \* \* \* \*

"In \* \* \* cases where on the particular facts it seems equitable to allow rescission without complete or perfect restoration of the consideration, the modern tendency seems to favor the relief, and courts of law adopting the more liberal rule in equity no longer adhere to the strict construction upheld in earlier decisions. Thus diminution in value of the consideration by lapse of time, or by reasonable use before the discovery of the fraud, will not invalidate an offer to return the diminished or deteriorated consideration. Likewise if the consideration has been applied for the defendant's benefit, or that part of it has been used in testing, will not prevent rescission, nor will inability to return the consideration, when the inability is due to the wrongful conduct of the fraudulent party.

"The matter has been thus summarized: 'That a party seeking rescission of a contract must return, or offer to return, what he has received under it, and thus put the other party as nearly as is possible in his situation before the contract, is the law. But this rule is wholly an equitable one; impossible or unreasonable things, which do not tend to accomplish equity in the particular transaction, are not required.'

\* \* \* \* \* \* \* \*

"Frequently a fraudulent seller will refuse to receive the goods when offered in rescission of the

bargain, and as to the rights of the buyer then, it has been said: 'A purchaser who is defrauded by the seller, and who in the lawful exercise of his right to rescind tenders the property to the seller, who refuses to receive it, is under no other obligation to him than to retain the property as his bailee and agent, and, after notice of his intention, may in good faith dispose of the same for account of the owner. If he sells the property otherwise than in good faith, the extent of his liability would be the fair market value of the same.' Doubtless such a right of resale is allowable, but in view of the chance for subsequent dispute as to the propriety of the buyer's conduct, if it does not involve expense or any great degree of care, it would seem safer for a defrauded buyer who wishes to rescind the transaction to retain the goods on behalf of the fraudulent seller if the latter refuses to assent to rescission." 3 Williston on Sales, Sections 649, 649a, at pages 498-502.

We are of the opinion the following rules for the measure of damages in cases of rescission by a defrauded buyer of personal property apply:

■ A defrauded buyer may rescind a contract by a tender and return of the consideration and recover his purchase price. *Elbinger Shoe Company v. Thomas,* 1 Tenn. App. 161 (1925). This is an absolute right. *True v. J. B. Deeds & Son,* 151 Tenn. 630, 271 S.W. 41 (1934).

■ In the event the seller refuses to accept the offer to rescind the defrauded buyer may, after notice, resell the personalty at the expense of the seller and apply the proceeds to the purchase price. *Cannon v. Chadwell,* 25 Tenn.App. 42, 150 S.W.2d 710 (1940).

■■ In the alternative, the defrauded buyer may hold the vehicle as bailee for the seller pending the outcome

of the matter in the courts. T.C.A. Section 47-1269(5). If he uses the property, he becomes liable for the value of its use. Furthermore, should the property become damaged and the damage is not caused by a breach of the seller, the buyer should be chargeable with such damage. T.C.A. Section 47-1269(3); 77 C.J.S. Sales secs. 116, 117, pages 829, 830, 831 and 832; *Hotchkiss v. Fortson,* supra.

■ No amount should be allowed for the depreciation of the market value of the property due to obsolescence or passage of time in arriving at a reasonable value of the use of the property. T.C.A. Section 47-1269 makes no allowance for it, nor are we able to find any decision of the appellate courts of this state which have. To allow a fraudulent seller depreciation of the market value of personal property, such as an automobile, due to obsolescence in addition to use value would permit the seller to profit by his own wrong and encourage fraud of the type adjudged in this case. The depreciation of this car for obsolescence and passage of time was due to defendant's insistence that complainant keep the car on the promise it would be repaired by defendant. Thus, the retention and use of the car by complainant was consistent with the repudiation of the contract.

To allow both depreciation and use value of this car would, we think, amount to a pyramiding of the damages at the expense of the defrauded buyer. Depreciation has been defined to consist of two types of conditions: "Conditions which are purely physical, such as those caused by deterioration from wear and tear; and conditions usually referred to as functional depreciation, which cover the effect of obsolescence and loss of adaptability, and even changes in style.." *State ex rel. State Highway*

*Commission v. Cone,* Mo., 338 S.W.2d 22; 26A C.J.S., Depreciation, Note 32.

Had the complainant in this case stored the car for the year, its market value would have depreciated. For these reasons, depreciation of the market value because of obsolescence is not a factor in determining the use value.

█ Although the Court of Appeals arrived at the correct rule in so far as depreciation of the market value of the car is concerned, we think that Court was in error in limiting the use value of the car to the period from the date of sale until the date of the offer to rescind.

For the foregoing reasons, we are of the opinion the defendant is entitled to an offset of a fair and reasonable use value of the car for the entire year based upon the condition of this particular car.

█ It is next insisted on behalf of defendant the Court of Appeals was in error in failing to hold the complainant was in no position to challenge the validity of the reference as ordered by the Chancellor for the reason Counsel for complainant agreed thereto. We disagree. The record shows complainant excepted to the report of the Master and his exception to query four was overruled. The Chancellor did not overrule the exception on the ground complainant had agreed to the reference, but on the ground he felt the defendant was entitled to an offset for any loss due to the use of the car by complainant. If the query was improper as a matter of law, as we have found, it was the duty of the Chancellor to sustain the exception. Moreover, from an examination of the briefs in the Court of Appeals, it appears this question was

not raised in that Court, nor does the record disclose this question was brought to the attention of the Chancellor.

■ It is also the contention of defendant that since the testimony upon which the Chancellor based his order of reference was not preserved as part of the record on appeal, complainant is not in a position to question the validity of the order. We cannot agree. No matter what the evidence was upon which the Chancellor may have based the order of reference, the query under consideration was improper as a matter of law. The Court of Appeals so held and reversed and remanded the case to be heard on a reference the Court found was a proper inquiry as to the allowance or setoff to be allowed defendant for the use of the car.

■ Defendant further insists a concurrent finding of fact by the Master and Chancellor was binding on the Court of Appeals and that Court was in error in reversing the Chancellor. This is the general rule, but there are exceptions to the rule as pointed out in the case of *Black v. Love and Amos Coal Company,* 30 Tenn.App. 377, 206 S.W.2d 432 (1947), as follows:

"A concurrence of the Master and the Chancellor is conclusive on appeal, (Code, sec. 10620) except (1) where it is upon an issue not proper to be referred *(State ex rel. [Weaver] v. Bolt,* 130 Tenn. 212, 169 S.W. 761); (2) where it is based on an error of law *(Hord v. Holston River Railroad [Co.],* 122 Tenn. 399, 123 S.W. 637, 19 Ann.Cas. 331, 135 Am.St.Rep. 878); (3) where it is upon a question of law or mixed fact and law *(Dale v. Hartman,* 157 Tenn. 60, 6 S.W.2d 319); or (4) where it is not supported by any material evidence."

Finally, defendant argues the judgment of the Court of Appeals is contrary to the weight and preponderance of the evidence. This assignment is not good for the reason the Court of Appeals found and reversed the Chancellor, not upon the evidence; but, because, in the judgment of that Court, an error of law had been committed.

Accordingly, all assignments of error are overruled and the judgment of the Court of Appeals is modified in accordance with this opinion and as modified affirmed and the cause remanded to the Chancery Court of Shelby County for further proceedings in accordance with this opinion. The costs of the appeal are adjudged against the defendant. The costs below will await the final disposition of the case.