**JOSEPH T. RYERSON & SONS, INC., Appellee,**

v.

**COMMODITY ENGINEERING COMPANY, Appellant,**

and

**Michael K. Whetstone, Defendant.**

**No. 81–1572.**

United States Court of Appeals, Fourth Circuit.

Argued May 5, 1982.

Decided Sept. 16, 1982.

Jay Bender, Columbia, S. C. (Clinch Heyward Belser, Belser, Baker, Barwick, Toal & Bender, Columbia, S. C., on brief), for appellant.

Michele Odorizzi, Chicago, Ill. (Robert F. Finke, Mayer, Brown, Platt, Chicago, Ill., on brief), J. Wesley Drawdy, Drawdy & Fordham, Columbia, S. C., on brief), for appellee.

Before HALL and ERVIN, Circuit Judges, and HAMILTON,* District Judge.

ERVIN, Circuit Judge:

Commodity Engineering Company ("Commodity") appeals from the district court's decision that Commodity had rejected certain equipment it purchased from Joseph T. Ryerson & Sons, Inc. ("Ryerson") and that Ryerson, therefore, was the owner of the equipment and was entitled to the proceeds from its sale under S.C.Code § 36–2–401(4) (1976). We affirm.

I.

In August 1975, Commodity, a South Carolina steel fabricator, ordered from Ryerson a Manco Fabriline Beamline system (Beamline)[1] with a purchase price of $111,204.00. Commodity sought to have the Beamline installed in its Columbia, South Carolina plant by October 1, 1975 in order to carry out various contracts it had made for the delivery of fabricated steel.

Ryerson informed Commodity that all the parts would not be available by October 1, 1975. The parties then agreed that part of

---

* Honorable Clyde H. Hamilton, United States District Judge for the District of South Carolina, sitting by designation.

1. The Beamline is specialized equipment designed to punch holes in steel beams.

the equipment would be installed by October 1 and that the remaining equipment would be installed two or three weeks later. The first installment of equipment, with a purchase price of $85,776.00, was delivered and installed on September 29, 1975. Thereafter, the Beamline would not function properly, causing holes to be punched in the beams at places other than those specified. Additionally, the hydraulic system failed. On October 16, 1975, after Ryerson had made several unsuccessful attempts to remedy these problems, Michael Whetstone, the president and chief stockholder of Commodity, met with Ryerson to discuss a price concession for the alleged defective equipment that had been installed. When Ryerson would not agree to a price concession, Commodity notified Ryerson that it was not accepting the Beamline.[2] Ryerson took the position that the equipment had been delivered, installed, and placed in operating condition substantially in accordance with the purchase order and that Commodity, therefore, was obligated to pay the full purchase price. An exchange of letters between the parties followed in which Commodity sought to return the Beamline and Ryerson pressed for payment.

Ryerson subsequently brought an action against Commodity and Whetstone to recover $85,776.00 for the delivered portion of the Beamline.[3] Commodity answered that the equipment had been rejected because it did not conform to the terms of the contract and counterclaimed for over $80,000 in incidental and consequential damages.[4] Commodity also moved for an order directing Ryerson to remove the Beamline from Commodity's plant. Before the Beamline could be removed, however, a jury trial began.

At trial Ryerson contended that Commodity had accepted and used the Beamline and, therefore, was obligated to pay the purchase price. Commodity argued that it had properly rejected the Beamline as defective, and that it was entitled to recover incidental and consequential damages. Neither party argued, nor was a jury charge given, regarding ownership of the Beamline.[5] The jury subsequently found that

2. On October 23, 1975, Commodity wrote the following to Ryerson:

We return herewith your invoice # 8089 in the amount of $85,776.00. Materials covered by this invoice were not as ordered and we are awaiting word from you as to its disposition.

3. Ryerson earlier had brought an action against Commodity to recover the entire $111,204.00 purchase price of the Beamline. The two actions were consolidated for trial.

4. Commodity sought damages for lost profits, liquidated damages for construction delays, and expenses incurred in installing the Beamline and making it operable.

5. The ownership issue was discussed at length, however, at the conference on jury instructions. The judge questioned whether Ryerson was entitled to damages for the purchase price of the Beamline when the court already had ruled that Ryerson owned it. Ryerson agreed that it was entitled to recover only shipping costs. Mr. Belser, counsel for Commodity, however, responded:

"I think the jury is going to have to decide whether the plaintiff is entitled to judgment for the purchase price or not and decide that without reference to the ruling [as to ownership] made here. And if the jury decides the plaintiff is entitled to a judgment for the purchase price then the machine when we pay it becomes ours and we would intend to pay it or appeal, or something. Presumably, we would contend we have the right to pay it and clearly it would be our machine at that point . . . ."

The following exchange subsequently occurred:

"THE COURT: If you contend you own it you tell me now because I can charge the jury different. See you can't do both. You can't own it and not own it.

"MR. BELSER: No, sir, I don't think that we own it, but let me finish.

"THE COURT: Yes, I'll let you finish.

"MR. BELSER: I think we don't own it and are not required to pay for it until the jury says that we did not rightfully reject it. I think we are entitled to a determination of the jury on that point. We think we rejected it rightfully, non-performance as to the time and the machine not working and being a difference between what was used and not being used, we've got a right for the jury to decide whether or not we are required to pay the purchase price or not.

"If the jury says we are required to pay the purchase price then we are deemed under law to be the owner of the machine. I think that seems to me to follow inevitably."

Ryerson was not entitled to recover the purchase price and that Commodity was not entitled to recover on its counterclaim.

The court then ordered Ryerson to sell the Beamline in a commercially reasonable manner and hold the proceeds pending further order of the court. Ryerson removed the Beamline from Commodity's plant and sold it for $67,500. The court subsequently ruled that Ryerson was entitled to retain the sale proceeds because Commodity has rejected the Beamline and that

> A rejection or other refusal by the buyer to receive or retain the goods, whether or not justified . . . revests title to the goods in the seller.

S.C.Code § 36–2–401(4) (1976).

## II.

On appeal, Commodity contends that the district court erred in awarding the sale proceeds to Ryerson because this was an action for money damages and, as such, ownership of the Beamline was presumed to be in Commodity. Commodity argues that its attempts to reject the delivered portion of the Beamline cannot convert this action to one for rescission because Ryerson maintained throughout the proceedings that Commodity had accepted the Beamline and the character of an action is to be determined on the basis of the plaintiff's pleadings, proof, and request for jury instructions.

In *General Electric Company v. Hicks,* 271 S.C. 470, 248 S.E.2d 266 (1978), the Supreme Court of South Carolina acknowledged that " 'the character of an action is primarily determined by the allegations set forth in the Complaint.' " *Id.* at 267 (quoting *Hydrick v. Mehlman's, Inc.,* 253 S.C. 652, 172 S.E.2d 824 (1970). The court held, however, that it may be appropriate to consider the defendant's pleadings and position to determine the actual character of the action.

In *Hicks,* General Electric brought an action against Hicks to recover the remainder of the purchase price ($4,461.51) for radio equipment it had sold to Hicks. Hicks filed a counterclaim to recover his $384.48 down-payment. The jury returned a verdict in favor of Hicks for the amount of the down-payment. In determining the disposition of the property, the trial judge held that since General Electric had sought payment of the purchase price in its complaint, Hicks was the owner of the property. The Supreme Court reversed, holding that Hicks' counterclaim amounted to a request for rescission. In reaching its conclusion, the court explained:

> In *Hydrick* we held that a dissatisfied purchaser has the choice of two remedies:
> "1. He may, upon discovery of the misrepresentation within a reasonable time, return or offer to return the property and demand a recission of the contract and a return of the purchase price; or,
> 2. He may retain the property, and demand damages for a breach of the contract."

271 S.C. 470, 248 S.E.2d at 267.

The Uniform Commercial Code, which was not mentioned by the court in *Hicks,* provides a buyer with essentially the same remedies. The buyer can (1) reject or revoke acceptance of delivered goods and recover any price paid plus incidental damages, S.C.Code § 36–2–711 (1976) or (2) accept the goods and sue for a breach of warranty, S.C.Code § 36–2–714 (1976). If the buyer rejects or revokes acceptance of the goods, title to the goods revests in the seller. S.C.Code § 36–2–401(4) (1976).

In this case, Commodity maintained throughout the litigation that it had reject-

---

Thereafter, the following issues were submitted to and answered by the jury as follows:

I. Is the plaintiff entitled to damages? <u>No</u>
  (a) If yes, in what amount? <u>N/A</u>
  (b) Are these damages for the purchase price? <u>N/A</u>
  (c) If the answer is yes, no other answer is necessary: If for other than the purchase price, what amounts as damages are assessed for other loss to plaintiff? <u>N/A</u>

II. Is defendant entitled to recover on its counterclaim? <u>No</u>
  If so, in what amount? <u>N/A</u>

Neither party objected to these issues or tendered other issues to the court.

ed the goods. It claimed justifiable rejection in all of its pleadings as well as in its presentation before the jury. Further, Commodity never tendered any payment for the Beamline and on several occasions attempted to have it removed from its plant. It is clear from these facts that Commodity has rejected the Beamline and that title to the Beamline, therefore, had revested in Ryerson under S.C.Code § 36–2–401(4).

The cases cited by Commodity to support its contention that its attempts to reject the Beamline did not convert this action to one for rescission are readily distinguishable from this case. In the cases in which the court found that the action was one for damages rather than rescission, the purchaser had paid the purchase price or a portion of it, *see Hydrick v. Mehlman's,* 253 S.C. 652, 172 S.E.2d 824 (1970); *City Council v. Cohen,* 29 S.C.L. (2 Speer) 408 (1844), or the jury had found that the buyer was obligated to pay the purchase price, *see Carter and Harden v. Walker,* 31 S.C.L. (2 Rich.) 40 (1845). Here, Commodity never paid the purchase price or any part of it and the jury determined that Commodity is not obligated to pay the purchase price.

Finally, we note that if any inequity to Commodity resulted from the decision of the district court, it is attributable to Commodity's own actions. Prior to the jury charge, Ryerson acknowledged that the court previously had ruled that it owned the Beamline and that it, therefore, was entitled to recover only the cost of shipping and other incidental expenses. Although Commodity agreed that it did not own the machine, Commodity insisted, nonetheless, that the jury be allowed to determine whether it was required to pay the purchase price of the Beamline.[6] The court then submitted the issues to the jury as requested by Commodity and the jury determined that Commodity was not required to pay the purchase price. The court's ruling that Commodity had rejected the Beamline, therefore, was reinforced by the verdict of the jury. Commodity simply is not now in a

position to complain about a result that it brought upon itself.

### III.

For the foregoing reasons, the decision of the district court is affirmed.

AFFIRMED.