No. 54,964

JOHN H. JOHNSON and E. JOAN JOHNSON, *Appellants*, v. GENERAL MOTORS CORPORATION, CHEVROLET MOTOR DIVISION, *Appellee*.

(668 P.2d 139)

Opinion filed August 4, 1983.

*Robert E. Keeshan*, of Scott, Quinlan & Hecht, of Topeka, argued the cause and was on the brief for the appellants.

*Michael J. Grady*, of Cosgrove, Webb & Oman, of Topeka, argued the cause,

and *Otis M. Smith*, General Counsel, General Motors Corporation, of Detroit, Michigan, was with him on the brief for the appellee.

The opinion of the court was delivered by

LOCKETT, J.: This action involves revocation of acceptance pursuant to K.S.A. 84-2-608. The issues raised in this appeal focus on the appropriate measure of damages for a buyer's use of goods after revocation of acceptance.

John and Joan Johnson, the appellants, purchased a new 1981 Chevrolet Silverado half-ton diesel pickup truck from Ed Roberts Chevrolet in Bonner Springs, Kansas, on October 7, 1980. The Johnsons traded in a 1979 Chevrolet pickup and paid $4,202.10 in cash in exchange for the new pickup. The total cost of the new truck was $11,119.65. The Johnsons received a limited warranty for the truck from the General Motors Corporation (GMC).

Problems with the new truck appeared immediately. On the trip home from the dealership, the truck's accelerator stuck in a wide open position while the truck was in traffic. Also, a substantial amount of oil leaked from the truck. The pickup was brought to the dealer for repairs but the problems continued.

In October, the Johnsons left for Idaho on a combined hunting and business trip in their new truck. While in Soda Springs, Idaho, on October 14, 1980, the truck's transmission ceased to operate and the truck would not move forward. The truck was towed to a Pocatello, Idaho, Chevrolet dealership for repairs. The Johnsons spent $121.00 for a motel room and $123.53 for a rental car during the several days it took the dealer to repair the truck. Coming back from Idaho, the truck ran rough, had trouble starting and was emitting quite a bit of smoke.

New problems with the truck developed. These included difficulties with the fuel injectors and injector pump, headlights, speedometer, air conditioner vent, hood, tailgate, paint job and glove compartment. Repairs were attempted under GMC's warranty agreement but the Johnsons had lost confidence in the truck. On November 30, 1980, the Johnsons, through their attorney, sought to revoke their acceptance of the truck and to return it for a refund of the purchase price. Their offer to return the truck was refused by GMC and the Johnsons continued to use the truck after a lawsuit was filed. Some repairs were performed under the warranty agreement during the time period after revocation and prior to trial.

On March 2, 1981, the Johnsons filed this action against GMC. The case was tried to the court April 2, 1982, and it was decided that the Johnsons' revocation was justified. GMC does not appeal this ruling. The court held a second hearing on June 18, 1982, to determine what setoff amount should be awarded to GMC because of the appellants' continued use of the truck after revocation. The trial court awarded a setoff of $4,702.94. The Johnsons would be refunded the remainder of the purchase price.

The principal issue is whether the trial court erred in allowing a setoff from the purchase price of the truck for the buyers' continued use of the truck after the buyers' revocation of acceptance. The buyers continued to drive the truck an additional 14,619 miles after notifying GMC of the revocation of acceptance.

The purpose of the Uniform Commercial Code (UCC) is to simplify, clarify and modernize the law governing commercial transactions. The doctrine of "liberal" construction is to be used when construing the UCC. The principles of law and equity, including the law merchant and the law relative to capacity to contract, principal and agent, estoppel, fraud, misrepresentation, duress, coercion, mistake, bankruptcy, or other validating or invalidating causes supplement the UCC's provisions except when displaced by a specific provision of the Act. K.S.A. 84-1-103.

Rejection and revocation are buyer's remedies to return delivered goods. Rejection is the buyer's refusal to keep delivered goods and notification to the seller of the buyer's refusal to keep the goods is required. Revocation of acceptance is a refusal to keep delivered goods that occurs after a buyer has accepted and the time for rejection has expired.

The right to reject goods is a remedy that is more available since rejection occurs prior to the buyer's acceptance. One who has held goods for a period of time or has by some action accepted, should have a greater burden to require a seller to accept return of the goods previously delivered to the buyer. The longer the buyer holds the goods, the greater the depreciation and if the buyer uses the goods after revocation of acceptance he will derive some benefit while using the goods.

Under proper rejection or revocation of acceptance, the buyer

is freed from his obligation to pay the purchase price. A buyer has a right to recover that portion of the purchase price already paid when rejection or revocation of acceptance is proper.

A buyer that has accepted a truck and sues for breach of warranty will recover only for the injury that resulted from defects in the truck at the time of the sale. A buyer that properly rejects or revokes after acceptance is first made whole from the injuries resulting from the seller's failure to perform his part of the agreement, escapes the bargain, and forces any loss resulting from depreciation of the goods back on the seller.

The basic policy for revocation of acceptance is contained in K.S.A. 84-2-608 which states in part:

"(1) The buyer may revoke his acceptance of a lot or commercial unit whose nonconformity substantially impairs its value to him if he has accepted it.

. . . .

"(b) without discovery of such nonconformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances.

"(2) Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects. It is not effective until the buyer notifies the seller of it.

"(3) A buyer who so revokes has the same rights and duties with regard to the goods involved as if he had rejected them."

The truck was purchased October 7, 1980. On November 30, 1980, through their attorney, the buyers notified the seller of their revocation of acceptance of the truck and requested a refund of the purchase price. GMC refused to accept the return of the truck but continued its offer to cure the defects under the warranty agreement given by GMC at the time of the sale. At the trial the court determined that the buyers' revocation of acceptance was proper and occurred within a reasonable time after buyers discovered the defects.

Since the buyers had taken possession of the goods, they had a security interest in the goods for the purchase price paid and any expenses reasonably incurred for the care and custody of the truck. Vesting the revoking buyer with a security interest for payments made and expenses incurred is pursuant to K.S.A. 84-2-711, which states in part:

"(1) Where the seller fails to make delivery or repudiates or the buyer rightfully rejects or justifiably revokes acceptance then with respect to any goods involved, and with respect to the whole if the breach goes to the whole contract

(section 84-2-612), the buyer may cancel and whether or not he has done so may in addition to recovering so much of the price as has been paid

"(*a*) 'cover' . . . or

"(*b*) recover damages . . .

. . . .

"(3) On rightful rejection or justifiable revocation of acceptance a buyer has a security interest in goods in his possession or control for any payments made on their price and any expenses reasonably incurred in their inspection, receipt, transportation, care and custody and may hold such goods and resell them in like manner as an aggrieved seller (section 84-2-706)."

A buyer who revokes has the same rights and duties with regard to the goods involved as if had rejected them. K.S.A. 84-2-608(3). This places the revoking buyer in the same position with one who rejects prior to acceptance thus eliminating the need for different sets of standards for resolving commercial disputes. The manner and effect of rejection and revocation are contained in the UCC.

After notification of rejection or revocation to the seller, a merchant buyer is obligated to follow any reasonable instructions received from the seller. If no instructions are received from the seller, a merchant buyer or other buyer may choose any of the options available to him under the UCC. The goods may be returned, stored for the seller, or sold for the seller's account with reimbursement to the buyer for reasonable expenses incurred caring for and expenses incurred in the sale of the goods. K.S.A. 84-2-603 and K.S.A. 84-2-604. A buyer is not permitted to retain such funds as he might believe adequate for his damages if he resells the goods. The proceeds are to be held by the selling buyer until his damages are properly determined.

Here buyers exercised none of the options available to them under the UCC. Instead, buyers, after revocation of acceptance, continued to use the truck. The UCC states after rejection any exercise of ownership by the buyer with respect to any commercial unit is wrongful as against the seller. K.S.A. 84-2-602(2)(*a*). A buyer's continued use of the goods after revocation of acceptance can constitute an acceptance of ownership and invalidate a cancellation of a sale. Here buyers were placed in a position where if they stored the truck or properly sold the truck, they would not have a vehicle for transportation until the trial of the issues or would be required to lease or purchase an additional vehicle. The buyers' continued use of the vehicle under these circumstances was not an act of continued use which constituted

an acceptance of ownership after revocation. With little or no low-cost public transportation available to the public, private transportation has changed from a luxury to a necessity.

The buyers suggest that a revoking purchaser may use the goods after revocation without penalty or cost in limited circumstances where use of the goods is required even after notice of revocation of acceptance. This issue has not been settled by earlier Kansas decisions construing K.S.A. 84-2-608. All existing decisions involved purchasers who, upon discovery of the defects, returned or stored the goods immediately. *Black v. Don Schmid Motor, Inc.*, 232 Kan. 458, 657 P.2d 517 (1983); *Newmaster v. Southeast Equipment, Inc.*, 231 Kan. 466, 646 P.2d 488 (1982); *McGilbray v. Scholfield Winnebago, Inc.*, 221 Kan. 605, 561 P.2d 832 (1977); *La Villa Fair v. Lewis Carpet Mills, Inc.*, 219 Kan. 395, 548 P.2d 825 (1976). Precode decisions avoided the question altogether because the common law required purchasers to elect between "rescission" and recovery of damages. Prompt return of unsatisfactory goods was a condition precedent to an action for rescission. See decisions annotated in the materials following K.S.A. 84-2-608. The question of cancellation in the absence of immediate return of the goods did not arise until enactment of the Code.

There is much support for the proposition of awarding a setoff for continued use of goods after revocation of acceptance. Many courts have awarded setoffs in circumstances similar to the present case. *Stroh v. Am. Rec.*, 35 Colo. App. 196, 530 P.2d 989 (1975); *Johannsen v. Minn. Valley Ford Tractor Co.*, 304 N.W.2d 654 (Minn. 1981); *Lawrence v. Modern Mobile Homes, Inc.*, 562 S.W.2d 729 (Mo. App. 1978); *Erling v. Homera, Inc.*, 298 N.W.2d 478 (N.D. 1980); *Jorgensen v. Pressnall*, 274 Or. 285, 545 P.2d 1382 (1976); *Moore v. Howard Pontiac-American, Inc.*, 492 S.W.2d 227 (Tenn. App. 1972). See also *Mobile Home Sales Manage. Inc. v. Brown*, 115 Ariz. 11, 562 P.2d 1378 (Ct. App. 1977).

The Colorado Court of Appeals in *Stroh v. Am. Rec.*, 35 Colo. App. at 201-03, used this reasoning to justify a setoff:

"Having determined that plaintiffs' revocation of acceptance was effective, we must determine whether their acts thereafter entitled them to an award for the entire purchase price. A buyer who asserts a right to revoke acceptance has the same duties and obligations as a buyer who asserts a right to reject the goods before acceptance. C.R.S. 1963, 155-2-608 (3). After rejection of goods, any

exercise of dominion and ownership rights is considered wrongful as against the seller. C.R.S. 1963, 155-2-602 (2) (a). The purpose of this requirement is to insure that the seller may regain possession of the goods in order to resell the goods or utilize them in order to minimize his loss. *Moeller Manufacturing, Inc. v. Mattis,* 33 Colo. App. 300, 519 P.2d 1218. Accordingly, notice of revocation of acceptance is necessarily a recognition by the buyer that the property belongs to the seller. Here, after revocation of acceptance on October 15, 1970, plaintiffs retained only a security interest for return of their purchase price. C.R.S. 1963, 155-2-711 (3). However, they continued to occupy the mobile home as their residence until they purchased a house in March of 1972 and thereupon vacated the mobile home. Even though defendants did not give instructions with respect to the home after they received notice of revocation of acceptance, plaintiffs' remedies under C.R.S. 1963, 155-2-711, do not include the right to beneficial use of the home. *See* C.R.S. 1963, 155-2-603. Therefore, we hold that plaintiffs' continued occupancy of the mobile home after the reasonable time at which plaintiffs should have acted under C.R.S. 1963, 155-2-604, was wrongful and defendants are entitled to an award of damages.

"There is no specific provision in the Uniform Commercial Code for an offset award of damages for wrongful use by the buyer. However, C.R.S. 1963, 155-1-103, provides that:

" 'Unless displaced by the particular provisions of this chapter, the principles of law and equity, including the law merchant and the law relative to capacity to contract, principal and agent, estoppel, fraud, misrepresentation, duress, coercion, mistake, bankruptcy, or other validating or invalidating cause shall supplement its provisions.'

"We recognize that the general rule is that where a buyer is entitled to rescind the sale and elects to do so, the buyer shall thereafter be deemed to hold the goods as a bailee for the seller. 77 C.J.S. Sales §§ 116 and 118; *and see Elwood Edwards, Inc. v. Kinsey,* 123 Colo. 52, 255 P.2d 59. Thus, if the buyer uses the goods while he holds them as a bailee, he becomes liable for the value of that use. *Staggs v. Herff Motor Co.,* 216 Tenn. 113, 390 S.W.2d 245. This reasoning is consistent with the Uniform Commercial Code, and, in the instant case, is consistent with the principles of law and equity which the Code provides for as supplementary to it provisions. *Moore v. Howard Pontiac-American, Inc.,* 492 S.W.2d 227 (Tenn. App.).

"Since the evidence showed that plaintiffs used the mobile home for a considerable length of time after they should have acted under C.R.S. 1963, 155-2-604, it follows that this use reduced the value of the home. Accordingly, defendants are entitled to an offset of a fair and reasonable use value of the mobile home for this period. *Gawlick v. American Builders Supply, Inc.,* 86 N.M. 77, 519 P.2d 313."

The appellants cite *Sanborn v. Aranosian,* 119 N.H. 969, 409 A.2d 1352 (1979), which denied a setoff. In that case the purchasers exercised their right of resale and traded in the car purchased. The setoff requested was for use of the car before revocation.

The weight of authority supports the granting of a setoff for use

after revocation. We agree that a seller is entitled to a setoff for the buyers' continued use of the truck after their revocation of acceptance.

The buyers complain that the trial court erred in granting a setoff for post-revocation use because evidence of its value was not presented during the original hearing. The trial court, after determining that the buyers' revocation of acceptance was valid, recessed the trial to allow the parties additional time to obtain evidence as to damages. At the second hearing the trial court denied the buyers' request for an additional two-week recess to allow the buyers to obtain additional evidence of value. The power to grant a recess is inherent within the trial court's power to control the orderly movement of cases. The exercise of the power is within the sound discretion of the trial court. *Slavenburg v. Bautts*, 221 Kan. 590, 595, 561 P.2d 423 (1977). The trial court did not abuse its discretion when it acted upon the two requests for recesses.

The buyers contend the trial court erred in the method of determining a proper setoff for the buyers' continued use of the truck after revocation of acceptance. GMC called an expert witness in the field of vehicle leasing. All costs of operation, maintenance, lessor's return on capital, insurance and other expenses were excluded by the expert witness to obtain pure depreciation. The expert witness testified that an identical vehicle leased for a term of 18 to 24 months depreciates at a rate of 2.75% per month. Therefore the truck depreciated in 20.33 months a total of $6,216.71. The setoff of the buyers' use after revocation was then calculated as follows:

| "Price of Vehicle | $ 11,119.65 |
|---|---|
| Monthly Rate of Depreciation (18 to 24 Month Lease) | x .0275 |
| Monthly Depreciation Cost | $ 305.79 |
| Months of Actual Use | x 20.33 |
| Total Depreciation Accrued | $ 6,216.71 |
| Total Miles Driven | ÷ 19,319 |
| Depreciation Per Mile | $ 00.3217 |
| Post-Revocation Mileage | x 14,619 |
| Use Offset | $ 4,702.94" |

The purpose of allowing revocation after acceptance is to restore the buyer to the economic position the buyer would have been in if the goods were never delivered. Rasor, Kansas Law of

Sales § 10-3 (1981). After revocation of acceptance any significant use by the buyer should allow the seller to recover from the buyers restitution for the fair value of any benefit obtained resulting from such use. The seller could avoid depreciation of the goods by accepting the buyers' revocation.

GMC contends the established rate of leased vehicle depreciation provides a simple and uniform method for calculating the value of the buyers' post-revocation use. The calculation would have been the same whether or not the buyer drove 10 or 14,619 miles after revocation of acceptance. The only variable is the cost per mile.

The buyers had attempted revocation of acceptance two months after purchase. It was GMC's failure to accept the vehicle's return by the buyers that necessitated a law suit. Sixteen plus months after the buyers' notice of revocation of acceptance the court tried the case and determined that the buyers' revocation was proper. GMC's pure depreciation method using the lease vehicle's monthly depreciation rate was not the proper method of determining the offset due to the buyers' use of the vehicle after revocation. This method allows the seller to recover a setoff based upon a period of time from the seller's refusal to accept back defective goods until there is a judicial determination that the seller was wrong not to accept the buyers' revocation of acceptance. The proper setoff is the value of use of the goods received by the buyer after his revocation of acceptance.

At the trial, over buyers' objection, GMC introduced into evidence the Federal Highway Administration booklet entitled "Cost of Owning and Operating Automobiles and Vans 1982." The booklet was authenticated by the government's resident administrator in compliance with K.S.A. 60-465. The trial court did not abuse its discretion when it overruled the buyers' objection to the introduction of the booklet into evidence. The Federal Highway Administration booklet stated the cost of owning and operating a similar vehicle to the truck purchased by the buyers is calculated at 33.2 cents per mile. After deduction of maintenance, gas and oil, parking and tolls, insurance and state and federal taxes, expenses the buyers have already paid, the booklet concluded the original vehicle cost to operate is 10.7 cents per mile. Since buyers drove the vehicle 14,619 miles at 10.7 cents per mile after revocation, the setoff would be

$1,564.23. From the evidence presented in this case, GMC is entitled to the sum of $1,564.23 as a setoff for the buyers' use of the truck after revocation of acceptance.

The buyers claim the trial court erred in failing to award them prejudgment interest from the date of revocation of acceptance. K.S.A. 16-201 provides:

"Creditors shall be allowed to receive interest at the rate of ten percent per annum, when no other rate of interest is agreed upon, for any money after it becomes due; for money lent or money due on settlement of account, from the day of liquidating the account and ascertaining the balance; for money received for the use of another and retained without the owner's knowledge of the receipt; for money due and withheld by an unreasonable and vexatious delay of payment or settlement of accounts; for all other money due and to become due for the forbearance of payment whereof an express promise to pay interest has been made; and for money due from corporations and individuals to their daily or monthly employees, from and after the end of each month, unless paid within fifteen days thereafter."

In the case of *La Villa Fair v. Lewis Carpet Mills, Inc.,* 219 Kan. 395, the court awarded prejudgment interest to a purchaser who rejected nonconforming goods pursuant to K.S.A. 84-2-602. The interest was calculated from the date the purchaser paid for the goods. The situation is very similar to the present case.

The price buyers paid for the truck is not disputed ($11,119.65). For prejudgment interest to be awarded, the amount owed must be a liquidated sum. A setoff or counterclaim does not alter the fact a liquidated sum is owed as of a certain date. However, the setoff is credited against the liquidated claim as of the date the claim was due. *Phelps Dodge Copper Products Corp. v. Alpha Construction Co.,* 203 Kan. 591, Syl. ¶¶ 1-4, 455 P.2d 555 (1969), explains liquidation and describes the effect of setoffs:

"Where an amount is due upon contract, either express or implied, and there is no uncertainty as to the amount which is due or the date on which it became due, the creditor is entitled to recover interest from the due date.

"A claim becomes liquidated when both the amount due and the date on which it is due are fixed and certain, or when the same become definitely ascertainable by mathematical computation.

"Ordinarily, where the amount of a claim is sufficiently certain as to amount and time to justify the allowance of interest thereon, the existence of an unliquidated setoff or counterclaim will not preclude interest on the balance of the demand found due from the date it became due.

"When a plaintiff sues for a liquidated sum and the defendant establishes an offsetting claim arising out of the same contract or transaction, the offset is to be

credited against the liquidated claim as of the due date of the original debt and the balance bears interest from that due date."

A party justifiably revoking acceptance pursuant to K.S.A. 84-2-608 is entitled to prejudgment interest from the date revocation is attempted. Any setoff due the seller because of a buyer's continued use of the goods after an attempt to revoke should be deducted from the total judgment which includes prejudgment interest. The setoff arises only after a seller refuses to accept return of the defective goods, and no setoff is due the seller on the revocation date.

Here there was no setoff at the date the claim was due. The setoff occurred after the due date because of seller's refusal to accept return of the defective vehicle. Prejudgment interest on the purchase price would commence to accumulate from November 30, 1980, until the date of judgment. Two of the courts which permitted setoffs for use of goods after revocation of acceptance have awarded interest on a judgment. *Stroh v. Am. Rec.,* 35 Colo. App. 196 (interest from date of revocation); *Erling v. Homera, Inc.,* 298 N.W.2d 478.

GMC argues a direct contractual connection between parties is required before prejudgment interest may be awarded. In both cases cited, the manufacturer was a defendant and had to pay a portion of the judgment. Direct contractual privity is not a prerequisite to filing suit for flawed goods sold. See *Chandler v. Anchor Serum Co.,* 198 Kan. 571, 426 P.2d 82 (1967). The absence of a contract between GMC and the buyers is not significant. In terms of equity, if GMC takes advantage of a setoff, then it should be responsible for any prejudgment interest from the date of revocation. In addition, the warranty for the truck was provided by GMC.

Other issues raised by the parties have been carefully considered by this court but not included in the opinion. The trial court was correct when ruling on those issues.

The awarding of a setoff to GMC is affirmed, but from the evidence presented in this case, the setoff should be $1,564.23. The decision not to grant the plaintiffs prejudgment interest is reversed. The interest should be calculated upon the entire purchase price from the date revocation was attempted until the date of judgment at the rate of ten percent. The case is affirmed in part, reversed in part and remanded to enter judgment in accordance with this opinion.