**CMI CORPORATION, an Oklahoma corporation, Plaintiff-Appellee,**

v.

**LEEMAR STEEL CO., INC., an Ohio corporation, Defendant-Appellant.**

**No. 82–1538.**

United States Court of Appeals, Tenth Circuit.

May 11, 1984.

---

Lisa Rabin McKenzie, Oklahoma City, Okl. (Kenneth I. Jones, Jr., Oklahoma City, Okl., with her on briefs) of Eagleton, Nicholson, Jones & Blaney, Oklahoma City, Okl., Attys., for defendant-appellant.

Rhonda Reynolds, Oklahoma City, Okl. (G. David Bryant and Thomas G. Blakley, Oklahoma City, Okl., with her on brief) of Linn & Helms, Oklahoma City, Okl., for plaintiff-appellee.

Before BARRETT, DOYLE and SEYMOUR, Circuit Judges.

BARRETT, Circuit Judge.

Leemar Steel Company (Leemar) appeals from a final judgment entered in favor of CMI Corporation (CMI) after trial to the court. CMI initiated this action seeking cancellation of a contract with Leemar and the return of money it had paid Leemar pursuant to the contract.

During the latter part of 1980, Leemar, an Ohio corporation, "went after" all the oil pump manufacturers to sell them its counterweight material. Daniel Malik, a Leemar salesman, initially contacted CMI, an Oklahoma corporation, on October 30, 1980, after finding CMI in the Dunn & Bradstreet Metalworking Guide. At that time Malik discussed Leemar's program with Carroll Logan, CMI's senior buyer. Thereafter CMI, at Malik's request, sent Leemar blueprints for two of its counterweight inserts. The blueprints were for CMI part number 507–7505, an insert of two-inch thickness, and part number 507–7506, an insert of one-inch thickness. Each of the blueprints was identified as the property of CMI and set forth the CMI product number along with the notation "TOLER-ANCES FRACTIONAL DIMS. ± ¹⁄₁₆ ____ ALL OTHER AS SHOWN."

On February 20, 1981, after Leemar had reviewed CMI's blueprints, Logan orally agreed with Jerry Martin, Leemar's sales manager, to a contract for fifty (50) inserts of two-inch thickness, CMI part number 507–7505, and twenty-five (25) inserts of one-inch thickness, CMI part number 507–7506.

On February 23, 1981, CMI, per Logan, mailed Leemar its purchase order No. 122204A for the seventy-five inserts, noting on the order "CONFIRMATION ONLY—ORDER PLACED 2–20–81." The purchase order also provided, *inter alia:*

> 2. Seller acknowledges that it has in its possession all applicable specifications and drawings ... and that such data are adequate to enable Seller to fairly determine its ability to perform.
>
> \*   \*   \*   \*   \*   \*
>
> 8. Seller warrants that all Articles will conform to applicable specifications, drawings, descriptions ...
>
> 25. ... The contract may be modified only in writing making specific reference thereto and signed by Buyer's agent.

On February 27, 1981, CMI, at Leemar's request, sent Leemar a telegram confirming its purchase order number 122204A for the seventy-five inserts.

On March 23, 1981, the inserts were delivered to CMI. On March 25, 1981, CMI received Leemar's invoice for the inserts. The invoice referenced CMI's purchase order number and further provided: "50 Pcs/Part No. 507–7505; 2″ Per Print" and "26 Pcs/Part No. 507–7506; 1″ per print." On March 28, 1981, Paul Smaglinski, manager of quality assurance for CMI, inspected the inserts. Subsequent thereto, and in accordance with Smaglinski's instructions, a material rejection record was prepared for the inserts, noting that the inserts were too thick.

On April 13, 1981, Logan called Malik and related that CMI had a "problem" with the inserts. Within the next several days, Malik related his conversation with Logan

to Martin "because he handles the problems a little better." Logan also called Malik at a later date, during which they discussed the "partial solution" suggested by Malik, i.e., that CMI get a price on what it would cost to grind the inserts down and bring them within tolerances. A number of discussions were also held between Logan and Martin as to the possibility of having someone grind the inserts.

On April 24, 1981, CMI sent Leemar its check for $15,627.40, paying in full the purchase price of the inserts.

After the parties were unable, apparently, to find someone to grind the inserts, CMI requested Leemar to pick up the inserts, and return the purchase price. Leemar refused to pick up the inserts or refund the money and this lawsuit ensued. Within its complaint CMI alleged that although it had notified Leemar that it was rejecting the goods, Leemar refused to pick-up the goods or offer to return the purchase price. CMI further alleged that Leemar had breached express and implied warranties by failing to manufacture the inserts in accordance with the 1/16″ tolerance set forth on its blueprint designs. Leemar moved to dismiss for lack of jurisdiction. Leemar subsequently withdrew its motion to dismiss and answered.

Within its answer Leemar denied that it had given CMI any express or implied warranties relative to merchantability or conformity for a particular use. Leemar also argued that all the inserts were within the specifications ordered by CMI.

At trial CMI established that the inserts were thicker than allowed by the blueprint specifications, and that the inserts were not usable by CMI because of their thickness and weight. Logan testified that he did not authorize Leemar, through Martin, to manufacture the inserts with a tolerance of 1/4″ rather than the 1/16″ tolerance set forth on the prints. Logan also testified that during the course of several conversations with Malik and Martin during May, June and July 1981, he was repeatedly told that Leemar was sending a truck to pick up the inserts, that a truck did not pick up the inserts, and that Martin had related that Leemar had not picked up the inserts because they were trying to locate a source to grind the inserts down to the print requirements.

Leemar defended on the basis that the inserts were not defective and were made in accordance with Logan's directions to Martin, and that, in the alternative, CMI accepted the goods and failed to make a timely and effective rejection or revocation of the goods. Martin testified that Logan stated that a tolerance of 1/4″ was acceptable during their February 20, 1981, telephone conversation, and that 1/4″ was the standard tolerance which Leemar was using/introducing for eighteen other manufacturers in the counterweight business.

In entering judgment in favor of CMI the district court found: although the evidence was in conflict, the parties agreed to dimensions on the steel consistent with the specifications (blueprints) sent by CMI to Leemar; the inserts were unusable by CMI; CMI notified Malik of "the problem" with the inserts on April 13, 1981; Leemar was not prejudiced by CMI's delay in notifying it (Leemar) of the nonconformity of the inserts and CMI's rejection; Leemar was given adequate time to cure the defect and failed to do so; CMI's delay in notifying Leemar did not affect the value of the inserts; the fact that CMI paid for the goods is not conclusive proof of acceptance and, when considered with the other evidence, it is clear that CMI did not accept the inserts. The court entered judgment in favor of CMI in the amount of $15,627.40, the purchase price of the inserts, interest of $2,875.44, along with costs and fees.

On appeal, Leemar contends that (1) CMI failed to give an effective notice of rejection to Leemar, (2) the court failed to give it the evidential presumption it was entitled to receive due to CMI's failure to produce the best evidence and witness, and (3) the district court's finding that CMI gave sufficient notice of rejection to Leemar is not supported by substantial evidence.

I.

Leemar contends that CMI failed to give it sufficient notice of rejection. Leemar

argues that a valid rejection must be clear and unequivocal and that the April 13, 1981, telephone conversation between Malik and Logan, found by the court to constitute a rejection, was in the nature of a complaint about a "problem," and did not give rise to a rejection. Leemar further argues that CMI committed acts which established that it had accepted the inserts, i.e., CMI paid for the inserts and tried to find a company to grind the inserts. Lastly, Leemar argues that CMI failed to give a timely notification of rejection.

■ Acceptance of goods occurs in Oklahoma when a buyer, after an opportunity to inspect them, relates to the seller that the goods are conforming or that he will take them despite their non-conformity, or where the buyer fails to make an effective rejection, or does any act inconsistent with the seller's ownership. *Atlan Industries, Inc. v. O.E.M., Inc.*, 555 F.Supp. 184, 187 (W.D.Okl.1983); Okla.Stat.Ann. tit. 12A § 2–606(1). A buyer is deemed to have accepted goods when, without making any effort to reject them, he receives the goods, processes them, and sells the finished product. *Atlan Industries, Inc., supra* at 187–88.

■ If the goods or tender of delivery fail in any respect to conform to the contract, the buyer may reject the whole, accept the whole, or accept any commercial unit or units and reject the rest. Okla.Stat. Ann. tit. 12A, § 2–601. Rejection of goods occurs when a buyer, within a reasonable time after the delivery or tender, seasonably notifies the seller of his rejection. Okla.Stat.Ann. tit. 12A, § 2–602. An action is taken "seasonably" when it is taken at or within the time agreed or within a reasonable time where no time is agreed upon. Okla.Stat.Ann. tit. 12A, § 1–204. What constitutes a reasonable time for taking any action depends on the nature, purpose, and circumstances of such action. *Id.* A person receives a notice or notification when "it comes to his attention" or "it is duly delivered at the place of business through which the contract was made or at any other place held out by him as the place for receipt of such communications." Okla.Stat. 12A, § 1–201(26). The issue of

whether a rejection of non-conforming goods comes within a reasonable time is generally a question of fact. *Sherkate Sahami Khass Rapol v. Henry P. Jahn & Son*, 701 F.2d 1049 (2d Cir.1983).

■ Applying these principles to the facts herein, we hold that CMI failed to give Leemar sufficient notice of rejection within a reasonable period of time. Our review of the record establishes several pertinent facts: CMI received the goods on March 23, 1981, and inspected the goods on March 28, 1981, at which time a material rejection report was written up indicating the goods were too thick; CMI did not mail Leemar its material rejection report; CMI related during an April 13, 1981, telephone call to Leemar that it had a "problem" with the goods; CMI paid for the goods on April 24, 1981; between April and July, 1981, *both* CMI and Leemar made repeated attempts to find someone who could grind the goods down to size; after CMI and Leemar were apparently unable to find someone to grind down the goods, CMI requested that Leemar pick up the goods and return the purchase price; when Leemar refused to pick up the goods or return the purchase price, CMI initiated this action.

■ The record does not establish that CMI, at any time, seasonably notified Leemar that it was rejecting the goods. Under these circumstances, we hold that the district court erred in finding that the telephone conversation of April 13, 1981, during the course of which CMI related that it had a "problem" with the goods, gave rise to a rejection of the goods. Although this conversation, made approximately three weeks after CMI had inspected the goods, was "seasonably" taken, nothing in the record indicates that Leemar received notice that the goods were rejected. Seasonable notice of rejection requires that a buyer give the seller clear and unambiguous notice of his rejection within a reasonable time. *Explorers Motor Home Corporation v. Alridge*, 541 S.W.2d 851 (Tex.Civ. App.1976). Under Oklahoma law, a failure

to reject goods results in their acceptance. Okla.Stat.Ann. tit. 12A, § 2–607.

Our holding that the district court erred in finding that CMI had rejected the goods does not necessitate a reversal. An appellate court will affirm the rulings of a lower court on any ground that finds support in the record, even where the lower court reached its conclusions from a different or erroneous course of reasoning. *Wiggins v. New Mexico Supreme Court Clerk,* 664 F.2d 812 (10th Cir.1981), *cert. denied* 459 U.S. 840, 103 S.Ct. 90, 74 L.Ed.2d 83; *Cayce v. Carter Oil Company,* 618 F.2d 669 (10th Cir.1980). Based thereon, we hold that although CMI's actions did not give rise to a rejection of the goods, its actions did constitute a seasonable revocation of its acceptance of the goods. Okla. Stat.Ann. tit. 12A, §§ 2–607, 2–711.

■■■■ In Oklahoma, a buyer may revoke his acceptance of goods of a nonconforming nature by notifying the seller within a reasonable time. *Darrow v. Spencer,* 581 P.2d 1309, 1313 (Okl.1978). *See* Okla. Stat.Ann. tit. 12A, §§ 2–607 and 2–608. The question of whether a buyer's revocation of an acceptance is timely is, as with rejections, a question of fact. *Rowe International, Inc. v. J–B Enterprises, Inc.,* 647 F.2d 830 (8th Cir.1981). A buyer who properly revokes has the same rights with regard to the goods involved as if he had rejected them. *Plastic Moldings Corporation v. Park Sherman Co.,* 606 F.2d 117 (6th Cir.1979); Okla.Stat.Ann. tit. 12A, § 2–608(3).

■■■■ With either a proper rejection or revocation, title to the goods revests with the seller, *Joseph T. Ryerson & Sons v. Commodity Engineering Company,* 689 F.2d 478 (4th Cir.1982), and the buyer is freed from his obligation to pay the purchase price. *Johnson v. General Motors Corporation, Chevrolet Division,* 233 Kan. 1044, 668 P.2d 139, 142 (1983); *Franklin v. Mercantile Trust Co.,* 650 S.W.2d 644 (Mo.App.1983). A buyer may also recover that portion of the purchase price already paid when a rejection or revocation of purchase is proper, *Franklin v. Mercantile Trust Co., supra.*

■■■■ We hold that CMI seasonably revoked its acceptance of the nonconforming goods when, as here, it obviously accepted the goods on the reasonable assumption that Leemar would cure the nonconformity, i.e., have the inserts ground down to specifications. Okla.Stat.Ann. tit. 12A, § 2–608(1)(a). Leemar, however, did not seasonably cure the nonconformity. (*See* R., Malik deposition at p. 39; Vol. IX at pp. 48–52.) It is uncontested that: (1) the inserts were not manufactured in accordance with the blueprint tolerances, (2) the nonconformity of the inserts as manufactured substantially impaired their value, (3) Leemar was aware that the inserts were not within the blueprint tolerances and was notified that CMI could not use the inserts as manufactured, (4) from and after April 13, 1981, into August, 1981, both parties communicated regularly in an attempt to find someone who could "cure" the nonconforming goods, i.e., grind them down to the blueprint tolerances, (5) after the parties were unable to have the inserts ground down, CMI requested that Leemar pick up the goods and return the purchase price, (6) and when Leemar refused to pick up the inserts and return the purchase price, CMI initiated this action.

Under such circumstances, CMI seasonably revoked its acceptance. Accordingly, title to the goods revested in Leemar and CMI was freed from its obligation to pay the purchase price and entitled to recover the purchase price they have already paid.

## II.

We have carefully considered Leemar's remaining allegations of error and hold them to be individually and collectively without merit.

WE AFFIRM.