William Stem filed an action against Gary Braden, seeking to rescind a contract for the sale of an automobile and to obtain the return of the purchase price plus interest. The trial court granted Stem that relief, but the Court of Civil Appeals reversed the trial court's judgment.
On February 26, 1987, Stem purchased a used automobile from Braden for $6,600. Braden indicated to Stem that, to the best of his knowledge, the car had not been wrecked and that the car was in good condition. Less than a week after purchasing the car, Stem discovered a disconnected plug that, when it was connected, caused the oil sensor warning light on the dashboard to glow. When Stem had the automobile examined because of the disconnected plug, the mechanics who examined the automobile discovered problems with the automobile that Stem did not realize existed. Among other problems, the mechanics discovered that the automobile was composed of the front end of a 1979 BMW and the rear end of a 1975 BMW. On March 10, 1987, Stem sent Braden a letter informing *Page 1113 
him that Stem refused the automobile and that he intended to rescind the sale. Further investigation revealed that the front half of the automobile actually had been driven 170,000 miles; Stem thought this automobile had 70,000 miles.
The trial court, after hearing ore tenus evidence, ordered Braden to pay Stem $6,600, an amount equal to the purchase price, plus interest of $726. The trial court wrote:
 "[T]he defendant failed to inform the plaintiff that the oil sensor light had been disconnected and that the speedometer had not been operational for approximately three and one-half months during the defendant's ownership of the automobile. Also, it is undisputed that the automobile had been previously wrecked and was reconstructed by welding together the front end of one car and the rear end of another car."
The Court of Civil Appeals reversed the trial court's judgment. That court stated that Stem, after he sent the letter refusing the automobile and attempting to rescind the sale, drove the automobile for 7 months and nearly 9,000 miles before commencing this action. The court then held that that use constituted an "acceptance" under Ala. Code 1975, § 7-2-606, which precluded Stem from receiving the relief the trial court granted:
 "We find that the use of the automobile by the buyer, subsequent to his attempted rescission, constituted an acceptance under [Ala. Code 1975, § 7-2-606]. Such acts were clearly inconsistent with the seller's ownership of the automobile. Therefore, we find that the remedy of rescission sought by the buyer is not available to him."
Braden v. Stem, 571 So.2d 1110 (Ala.Civ.App. 1989).
Because there are numerous grounds for rescission of a contract, we do not agree that if Stem accepted the automobile then rescission necessarily was "not available," as the Court of Civil Appeals implies. That court, however, did address whether Stem revoked his acceptance of the automobile, which is the starting point for a proper analysis of this case.
Revocation of acceptance of goods is addressed by Ala. Code 1975, § 7-2-608, which provides:
 "(1) The buyer may revoke his acceptance of a lot or commercial unit whose nonconformity substantially impairs its value to him if he has accepted it:
 "(a) On the reasonable assumption that its nonconformity would be cured and it has not been seasonably cured; or
 "(b) Without discovery of such nonconformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances.
 "(2) Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects. It is not effective until the buyer notifies the seller of it.
 "(3) A buyer who so revokes has the same rights and duties with regard to the goods involved as if he had rejected them."
The Official Comments to that provision provide additional information concerning the provision:
 "1. . . . [T]he buyer is no longer required to elect between revocation of acceptance and recovery of damages for breach. Both are now available to him. The non-alternative character of the two remedies is stressed by the terms used in the present section. The section no longer speaks of 'rescission,' a term capable of ambiguous application either to transfer of title to the goods or to the contract of sale and susceptible also of confusion with cancellation for cause of an executed or executory portion of the contract. The remedy under this section is instead referred to simply as 'revocation of acceptance' of goods tendered under a contract for sale and involves no suggestion of 'election' of any sort. *Page 1114 
 "2. Revocation of acceptance is possible only where the non-conformity substantially impairs the value of the goods to the buyer. For this purpose the test is not what the seller had reason to know at the time of contracting; the question is whether the non-conformity is such as will in fact cause a substantial impairment of value to the buyer though the seller had no advance knowledge as to buyer's particular circumstances."
The record would support a finding by the trial court that Stem revoked his acceptance of the automobile pursuant to §7-2-608. The trial court could properly have determined that Stem's acceptance of the automobile had been reasonably induced by Braden's assurances. The record indicates that the vehicle had been previously involved in at least one accident, that the vehicle was composed of two welded-together halves of other vehicles, that the speedometer had been disconnected for three and one-half months while Braden owned the car, that the vehicle had 100,000 more miles on its front half than Stem thought it had, and that the mileage on the back half was not known for certain. Although the trial court permissibly could have considered Stem's use of the car as evidence that its value was not substantially impaired, Dickson v. U-J ChevroletCo., 454 So.2d 964, 967 (Ala. 1984), it was not compelled to do so. Accordingly, the trial court could have determined that the automobile's nonconformities substantially impaired its value to Stem. There is no substantial dispute either that Stem's revocation occurred within a reasonable time or that Stem properly notified Braden, and the trial court could have found that Stem revoked his acceptance within a reasonable time and that he met the notice requirements of § 7-2-608.
When Stem revoked his acceptance, he had the same rights and duties with regard to the automobile that he would have had had he rejected it. § 7-2-608(3). Section 7-2-602 addresses the manner and effect of rejection, and § 7-2-602(2)(a) provides that "after rejection any exercise of ownership by the buyer with respect to any commercial unit is wrongful as against the seller." Accordingly, although Stem revoked his acceptance, his continued use of the automobile was "wrongful" against Braden. There is no definition of "wrongful" as it is used in §7-2-602(2)(a), either in statutes or in Alabama case law, to explain the consequences of Stem's continued use of the vehicle.
The Court of Civil Appeals held that Stem's use of the vehicle constituted "acceptance"; however, the opinion did not state that Stem's use constituted a "second acceptance" after revocation, or a "waiver of revocation" resulting in an acceptance, or that the record would not support a finding of revocation and that the use of the automobile constituted acceptance. Even if any of those holdings would be proper, the opinion in no way addresses what is "wrongful" under §7-2-602(2)(a). Accordingly, the opinion assumes that the only way to address Stem's continued use of the automobile is in terms of whether he accepted ownership of the automobile.
Sections 7-2-602 and 7-2-606 through -608 are derived from the Uniform Commercial Code and, accordingly, many states have enacted similar provisions into statutory law. A review of the case law construing similar provisions indicates that the Court of Civil Appeals' treatment of the issue of Stem's use of the automobile only in terms of acceptance of the automobile is inappropriately simple. Many cases involve extensive use of automobiles and motor homes after revocation; the cases emphasize the practical consideration that an individual who buys an automobile or a motor home may very well be unable, without extraordinary financial difficulty, to tender the automobile or motor home and do without it until the litigation concerning it is completed. For example, in Johnson v. GeneralMotors Corp., 233 Kan. 1044, 668 P.2d 139 (1983), the buyers of a truck drove that vehicle 14,619 miles after revocation of acceptance, and the Kansas Supreme Court held that that use of the vehicle was not an acceptance. For additional examples, seeJorgenson v. Presnall, 274 Or. 285, 545 P.2d 1382 (1976); Strohv. American Recreation Mobile Home *Page 1115 Corp., 35 Colo. App. 196, 530 P.2d 989 (1975); Johannsen v.Minnesota Valley Ford Tractor Co., 304 N.W.2d 654 (Minn. 1981). These courts, construing provisions similar to § 7-2-602, held that continued use after revocation was "wrongful" but did not constitute acceptance.
With uniformity, the courts have held that the "wrongful" use entitles the seller to prove the reasonable value of the buyer's use and to recover that amount as a setoff, and many courts have awarded setoffs in circumstances similar to those of the present case. Johnson v. General Motors Corp., supra;Stroh v. American Recreation Mobile Home Corp., supra;Johannsen v. Minnesota Valley Ford Tractor Co., supra;Jorgenson v. Presnall, supra; Gawlick v. American BuildersSupply, Inc., 86 N.M. 77, 519 P.2d 313 (1974); Lawrence v.Modern Mobile Homes, Inc., 562 S.W.2d 729 (Mo.App. 1978); Moorev. Howard Pontiac-American, Inc., 492 S.W.2d 227
(Tenn.App. 1972).
The Colorado Court of Appeals in Stroh, supra, used the following rationale to explain the setoff:
 "Having determined that plaintiffs' revocation of acceptance was effective we must determine whether their acts thereafter entitled them to an award for the entire purchase price. A buyer who asserts a right to revoke acceptance has the same duties and obligations as a buyer who asserts a right to reject the goods before acceptance. C.R.S. 1963, 155-2-608(3). After rejection of goods, any exercise of dominion and ownership rights is considered wrongful as against the seller. C.R.S. 1963, 155-2-602(2)(a). The purpose of this requirement is to insure that the seller may regain possession of the goods in order to resell the goods or utilize them in order to minimize his loss. Moeller Manufacturing, Inc. v. Mattis, 33 Colo. App. 300, 519 P.2d 1218 [(1974)]. Accordingly, notice of revocation of acceptance is necessarily a recognition by the buyer that the property belongs to the seller. Here, after revocation of acceptance on October 15, 1970, plaintiffs retained only a security interest for return of their purchase price. C.R.S. 1963, 155-2-711(3). However, they continued to occupy the mobile home as their residence until they purchased a house in March of 1972 and thereupon vacated the mobile home. Even though defendants did not give instructions with respect to the home after they received notice of revocation of acceptance, plaintiffs' remedies under C.R.S. 1963, 155-2-711, do not include the right to beneficial use of the home. See C.R.S. 1963, 155-2-603. Therefore, we hold that plaintiffs' continued occupancy of the mobile home after the reasonable time at which plaintiffs should have acted under C.R.S. 1963, 155-2-604, was wrongful and defendants are entitled to an award of damages.
 "There is no specific provision in the Uniform Commercial Code for an offset award of damages for wrongful use by the buyer. However, C.R.S. 1963, 155-1-103, provides that:
 " 'Unless displaced by the particular provision of this chapter, the principles of law and equity, including the law merchant and the law relative to capacity to contract, principal and agent, estoppel, fraud, misrepresentation, duress, coercion, mistake, bankruptcy, or other validating or invalidating cause shall supplement its provisions.'
 "We recognize that the general rule is that where a buyer is entitled to rescind the sale and elects to do so, the buyer shall thereafter be deemed to hold the goods as a bailee for the seller. 77 C.J.S. Sales §§ 116 and 118; and see Elwood Edwards, Inc. v. Kinsey, 123 Colo. 52, 225 P.2d 59 [(1950)]. Thus, if the buyer uses the goods while he holds them as a bailee, he becomes liable for the value of that use. Staggs v. Herff Motor Co., 216 Tenn. 113, 390 S.W.2d 245 [(1965)]. This reasoning is consistent with the Uniform Commercial Code, and, in the instant case, is consistent with the principles of law and equity which the Code provides for as supplementary to its provisions. Moore v. Howard Pontiac-American, Inc., 492 S.W.2d 227 (Tenn.App.[1972]). *Page 1116 
 "Since the evidence showed that plaintiffs used the mobile home for a considerable length of time after they should have acted under C.R.S. 1963, 155-2-604, it follows that this use reduced the value of the home. Accordingly, defendants are entitled to an offset of a fair and reasonable use value of the mobile home for this period. Gawlick v. American Builders Supply, Inc., 86 N.M. 77, 519 P.2d 313 [(1974)]."
The ruling of the Colorado court is sound, and we accept its rationale. Additionally, we note that if Stem had exercised any of his options available under Alabama's commercial code concerning storing or returning the vehicle, he would have been put in the position of doing without a vehicle for transporting his child, which was one of the primary purposes for which he bought the vehicle, until trial of this case or else he would have been required to purchase or lease an additional suitable vehicle. Under these circumstances Stem's continued use of the automobile was not an act of continued use that constituted an acceptance of ownership after revocation. Johnson v. GeneralMotors Corp., 233 Kan. at 1049, 668 P.2d at 143.
The judgment of the Court of Civil Appeals is due to be reversed and the cause remanded. The trial court is directed to determine any appropriate setoff in a manner consistent with this opinion.
REVERSED AND REMANDED WITH INSTRUCTIONS.
HORNSBY, C.J., and MADDOX, JONES, ALMON, SHORES, ADAMS and HOUSTON, JJ., concur.
STEAGALL, J., concurs in the result.